## NASHVILLE, C. & ST. L. RY. *v.* J. W. COLEMAN.*

### (*Nashville.*  December Term, 1924.)

1. **MASTER AND SERVANT.** Employee not excused for failure to use safety appliances, though not required by rule.

Under Workmen's Compensation Act, section 10, an employee is not excused for failure to use a safety appliance at hand, when nature of work demands it, and he knows it, even though use of such appliance has not been required by any rule of employer. (*Post,* *pp.* 446, 447.)

Acts cited and construed: Acts 1919, ch. 123, sec. 10.

2. **MASTER AND SERVANT.** Evidence held to sustain finding boiler maker knew of rule requiring use of goggles.

Evidence *held* to sustain finding that boiler maker knew of rule requiring use of goggles while engaged in cutting rivet heads off boiler. (*Post, pp.* 447-449.)

3 **MASTER AND SERVANT.** Boiler maker's failure to use goggles held ''willful failure,'' barring compensation for injury.

That boiler maker used goggles when he thought it proper, and did not use them when he thought it was unnecessary, notwithstanding rule of employer requiring use thereof, *held* a "willful failure" to use safety appliance, within meaning of Workmen's Compensation Act, section 10, precluding him from recovering compensation. (*Post, pp.* 447-449.)

Case cited and distinguished: N., C. & St. L. Ry. v. Wright, 147 Tenn., 619.

---

*Headnotes 1. Workmen's Compensation Acts, C. J., Section 78 (1926 Anno); 2. Workmen's Compensation Acts, C. J., Section 139; 3. Workmen's Compensation Acts, C. J., Section 78.

---

### FROM DAVIDSON.

---

*On failure to use safety appliance, as serious and wilful misconduct, barring recovery under Workmen's Compensation Act, see notes in 4 A. L. R. 121; 9 A. L. R. 1377; 23 A. L. R. 1172, 1186, 26 A. L. R. 167, 169.

Error to the Circuit Court of Davidson County.—Hon. E. F. LANGFORD, Judge.

SETH M. WALKER and WM. WALLER, for plaintiff.

G. S. MOORE and JOHN H. DE WITT, for Coleman.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit under the Workmen's Compensation Act (chapter 123 of the Acts of 1919) by an employee of the railway company to recover for injuries resulting in the loss of an eye, which he sustained in the course of his employment. There was a judgment for the plaintiff below, from which the employer has appealed in error.

The employee was a boiler maker of fifteen or twenty years' experience. He was injured November 23, 1921. He was engaged in cutting the head of a rivet off a boiler which he was dismantling when injured. He was holding a hex punch on the rivet head, and his helper was hitting the punch with a large hammer. The rivet head flew off, hit a pipe nearby, and rebounded, striking Coleman in the eye and inflicting such injuries as made the removal of the eyeball necessary.

The railway company bases its defense to Coleman's claim for compensation on section 10 of chapter 123 of the Acts of 1919, which is as follows:

"That no compensation shall be allowed for an injury or death due to the employee's willful misconduct or intentional self-inflicted injury, or due to intoxication, or willful failure or refusal to use a safety appliance or perform a duty required by law."

In doing such work as Coleman was engaged upon at the time of his injury, he was allowed two helpers. One of these helpers wielded the hammer, and customarily the other helper held a broom over the rivet head. At the time Coleman was hurt, work had just begun in the morning, and but one of his helpers had reported. That helper was using the hammer, and no one was holding the broom over the rivet head.

The proof shows that, when cut off in this way, rivet heads are likely to fly with great force about the shop, and to prevent employees from being struck by them, as well as because the work was hard, the men had requested that two helpers be allowed about such a job, one helper to use the hammer and the other helper to hold a broom over the rivet head as before stated. The helpers alternated with the broom and the hammer. This request by the men had been granted by the railway company, and a rule requiring such use of a broom had been promulgated.

The company had a further rule in these words:

"Goggles must be worn by all workmen when chipping, using air motors, drilling, sledging of any kind, when using emery wheels, electric welders, or any work where their duties require that their eyes be protected from flying particles."

The railway company had provided brooms for use about this kind of work and had supplied Coleman with a pair of goggles, and it insists that Coleman's injuries were due to his willful failure to make use of these safety appliances, which appliances had been furnished to him, and the use of which was required in the work he was doing.

Although Coleman, the plaintiff below, was reluctant to say so, we think it clearly appears from his testimony that he knew of the existence of the rule about the use of the broom and of the rule about the use of the goggles. The trial judge found that Coleman knew of the rule requiring him to use goggles "in the character of work he was doing when injured." Coleman testified that the men asked for and were given two helpers about such work, and customarily one helper held a broom over the head of a rivet when it was being cut off, but he said that he did not know such use of a broom was required by any rule. He did know, however, that brooms were to be had for this purpose and were ordinarily so used.

We do not think that the employee can be excused for failure to use a safety appliance at hand, when the nature of his work demands the use of such appliance and he knows it, even though such use of such appliance has not been required by any rule of the employer. The statute contains no such thought. The statute provides that there shall be no recovery if the injury is due to "willful failure or refusal to use a safety appliance." If, therefore, an employee willfully fails to use a safety appliance demanded by the men, the use of which is approved by the employer and the appliance furnished by the employer, and which appliance is customarily used, it seems to us that the employee is in no better plight than had the use of the appliance been required by the employer's rule.

While Coleman testified that he did not regard the work he was doing when hurt as a goggle job, and did not regard his eyes as in particular danger when doing

this work, still he further said that rivet heads were likely to fly off over the shop when being cut off in the manner in which he was cutting them. He also admitted that particles of steel sometimes fly off a rivet head when it is being cut. Taking Coleman's testimony as a whole and all the other proof in the record, we think it appears without conflict that cutting of rivet heads is a dangerous job to those participating in it and those nearby, if this work is not carried on with safety appliances. Safety appliances were available to Coleman, namely, a broom and goggles. Such appliances were often, if not ordinarily, used about such work, even according to Coleman's testimony. He said that he had seen men doing this work with goggles and without goggles.

At the request of the defendant below the court found:

"That plaintiff knew of the rule requiring him to use goggles in the character of work he was doing when injured, . . . however, that plaintiff was not guilty of willful misconduct or willful failure, or refusal to use a safety appliance, and that he was satisfied with the notice."

From the statements heretofore made it is apparent that there was evidence to sustain the finding of the court below that the plaintiff knew of the rule requiring the use of goggles on the job he was engaged in. It remains for us to determine whether his failure to use them was willful, so as to deprive him of compensation under section 10. We leave out of consideration his failure to use the broom.

In *Nashville, C. & St. L. Ry.* v. *Wright*, 147 Tenn., 619, 250 S. W., 903, we said that:

". . . According to the great weight of authority, 'willful failure' to observe a rule or use a safety appliance is not a mere voluntary failure. Otherwise contributory negligence would defeat a recovery under a compensation statute. Willful misconduct means something more than negligence. It carries the idea of deliberation and intentional wrongdoing."

In the course of his testimony with reference to his use of goggles, Coleman said that he wore them when he thought he was in danger. His examination then proceeded:

"Q. You wore them when you thought it required it, and did not when you thought it did not require it? A. Yes; it was very uncomfortable, nevertheless I was as much interested when I though I was in danger as any man."

This statement in substance is repeated by Coleman several times in his proof. The effect of his testimony must be conceded to be that he used goggles when he thought it proper, and did not use them when he thought it was unnecessary. In other words, Coleman acted upon his own judgment customarily about the use of goggles and was not governed by the rule of the railway company. When he substituted his own judgment about the matter for his employer's rule and set aside that rule in favor of his own notions, we think this conduct was willful disobedience. It involved both intent and deliberation and was not a casual, although voluntary, act such as we had in mind in *Nashville, C. & St. L. Ry.* v. *Wright,* supra. According to Coleman's testimony the cutting of this rivet without the use of safety appliances was not an isolated transaction, but was of a piece with

his usual conduct. Such habitual violation of a rule, in our judgment, cannot be anything else than willful, and this is the case before us.

We accordingly reach the conclusion that this suit should have been dismissed, and it is so ordered here; the judgment of the circuit court being reversed.

It should be said that, in our opinion, the railway company used more than reasonable diligence toward procuring obedience to its rules respecting goggles. Lectures were delivered to the men, bulletins posted, pictures displayed, a safety committee appointed—all with a view of impressing the protection afforded by this instrumentality. Obedience to its rules was likewise enforced with as much discipline as could have reasonably been expected of the railway company, considering the fact that the labor in its shop was unionized, and it was the effort of the employer to avert the shopmen's strike which afterwards materialized and became general over the country.