KINGSPORT FOUNDRY & MACHINE WORKS, INC. *et al. v.*
MAE SHEFFEY *et al.**

(*Knoxville.* September Term, 1927.)

Opinion filed, November 21, 1927.

1. **WORKMEN'S COMPENSATION. DISOBEDIENCE TO ORDER.**

Where it appears that an employee had been ordered not to use a machine but no evidence was offered that it would be dangerous to use the machine, or that the employee believed himself that it would be dangerous, such use cannot be construed as having been in disobedience to orders within the meaning of the Workmen's Compensation law. (Post, p. 153.)

Citing: Leonard v. Cranberry Furnace Co., 150 Tenn. (23 Thomp.). 346.

2. **WORKMEN'S COMPENSATION. FACTS APPLIED.**

Where it appears that within thirty minutes of the time of the accident the employer had manifested irritation at the delay in getting a piece of work done, and had instructed his employees to get it done "right now," his previous instructions not to use a machine were not based upon a belief that such use would be dangerous but upon his expressed opinion that the machine would not do the work, there is no element of wilful disobedience on the part of the employee so as to deprive him of the benefit of the Workmen's Compensation Law. (Post, p. 153.)

---

*Headnotes 1. Workmen's Compensation Acts, C. J., section 78; 2. Workmen's Compensation Acts, C. J., section 78; 3. Workmen's Compensation Acts, C. J., section 143.

---

FROM SULLIVAN.

---

Appeal from the Law Court of Sullivan County.—HON. H. T. CAMPBELL, Judge.

B. H. HAGEY, for plaintiff in error.

WORLEY & McAMIS and DODSON & FERGUSON, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

Mae Sheffey was awarded compensation for herself and minor children for the death of her husband, Roy T. Sheffey, who was killed while working as an employee of the Kingsport Foundry & Machine Works, Incorporated, and the company has appealed.

It is stated on the brief of the appellant that only one question is presented on the appeal, which is stated as follows:

"Does an injury sustained by an employee while doing something which he had been specifically told not to do arise out of and in the course of employment?"

The deceased workman, Roy T. Sheffey, was employed as an iron molder. A short time before the accident, which resulted in his death, his employer had undertaken to make three pieces of grating to replace worn parts in a locomotive owned by the Kingsport Extract Company. The work had been undertaken by the employer as a "rush" job, and considerable delay had resulted in the completion of the gratings. The delay resulted from the fact that the casting, which was to be used as a pattern for the mold in which the new pieces were to be made, was too rough for use as a pattern.

James Berger, owner and operator of the foundry, testified that he bought a new file and gave it to Wagner, one of his three molders, and told him to file the grating as smooth as he could get it. Further delay resulted,

and one of the other molders asked Mr. Berger if the pattern could not be made smooth by grinding with an emery wheel. Mr. Berger testified that he replied "No sir," and gave as his reason that the emery wheel was too thick to go between the openings of the grating. He stated "that is why I gave instructions not to take that to the rock." Mr. Berger's testimony proceeds as follows:

"I told them that grate had to be made some way. I looked at it and got a little sore. I said, 'You fellows carry that grate right now;' and I went back to the office. About thirty minutes after that, Wagner came to the office and said Sheffey got killed. It surprised me, because I did not understand how the man could get killed." The evidence further shows that a molder named White first undertook to grind the casting on the emery wheel, but had abandoned the work when Sheffey took it from him to the wheel. While he was using the emery wheel on the grating, the stone burst into several pieces, one of which hit Sheffey in the head and killed him.

It was further shown that the emery wheel which Sheffey used was maintained and used in the foundry for grinding castings.

One of the molders, testifying as a witness for the employer, stated that he did not know whether Sheffey had heard Mr. Berger tell them not to use the emery wheel on the casting, but Mr. Berger testified again in rebuttal that Sheffey said to him that he believed he could smooth it on the wheel, and that he told Sheffey not to do that.

The trial judge found as a fact that Sheffey was instructed not to use the wheel on the grating, but that they were all anxious to make the grating, and that Sheffey may have thought he could do the work on the emery wheel.

No evidence was offered that Berger had instructed Sheffey, or the other molders, that it would be dangerous to use the emery wheel on this grating, or that he himself believed it would be dangerous to use the emery wheel. On the contrary, the evidence is only that his instructions not to use the wheel were given because he did not think the wheel would be effective to do the work, on account of its size.

(1) The test of the application of the compensation statute to the facts proven is to be found in the opinion of this court in *Leonard* v. *Cranberry Furnace Co.,* 150 Tenn., 346. It was held in that case, in effect, that while the violation by an employee of an instruction which limits the sphere of his employment, will place the resulting activity of the employee outside the sphere or scope of his employment, the same result will not follow from a violation of instructions with regard to the conduct of the employee within the sphere of his employment; and that if the workman is acting within the scope of his employment, a mere disregard of the order does not become "willful misconduct, unless the disobedience be in fact willful or deliberate, and not merely a thoughtless act on the spur of the moment."

(2) The facts in the present case show that within thirty minutes of the time of the accident Sheffey's employer had manifested irritation at the delay in making the casting smooth enough for a pattern, and had instructed his employees to get the work done "right now." His previous instructions not to use the emery wheel were not based upon a belief that such use of the wheel would be dangerous, but upon his expressed opinion that the wheel would not do the work. As stated by the trial judge, the workman may have believed that his employer was mistaken and that the casting could be made smooth

enough by using the wheel. At any rate, the situation was one calling for ingenuity, and we are wholly unable to see any element of willful disobedience in the effort of the employee to finish the work which his employer had requested in vigorous terms. The instruction which he violated did not limit the sphere of his employment, but dealt only with his conduct within such sphere. It is our opinion, therefore, that the accident, for which compensation is sought, was one which arose out of and in the course of Sheffey's employment.

A further argument is made for the appellant, based upon the following facts. The emery wheel in question was operated by an electric motor. This motor was equipped with an automatic switch, which would cut off the current whenever the wheel should be overloaded. After the accident it was found that this switch was tied with a wire in such a way as to prevent its being thrown by an overload. It is urged for the appellant that these facts indicate a willful refusal of Sheffey to use a safety appliance, so as to bar the recovery of compensation for his death.

It does not appear from the motion for a new trial that this proposition was called to the attention of the trial judge, and the only assignment of error is that there is no evidence to support the judgment of the trial court. Furthermore, there is no evidence to show that the switch was tied by or with the knowledge of Sheffey, or that the accident resulted from overloading the emery wheel, or from other circumstances which the automatic switch would have prevented. The cause of the breaking of the wheel was not developed in the evidence.

We find no error on the record, and the judgment of the trial court will be affirmed.