AMERICAN MUT. LIABILITY INS. CO. *et al. v.* GARTH *et al.*

(*Nashville*, December Term, 1938.)

Opinion filed March 4, 1939.

TRABUE, HUME & ARMISTEAD, and REBER BOULT, all of Nashville, and G. F. BEDENBAUGH, of Chattanooga, for plaintiffs in error.

A. LAWSON DAVIS, of Nashville, and THOS. W. LAYNE, of Huntsville, Ala., for defendants in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This appeal is from an award of compensation for the accidental death of Nathan Garth, a colored helper in the boiler room of the Oil Mills. The sole insistence made is that this employee's death was due to his ''willful misconduct, or intentional self inflicted injury.''
We find no evidence supporting the charge of ''intentional self inflicted injury,'' and shall confine our discussion to the charge of ''willful misconduct.''
While engaged in cleaning ashes from a combustion chamber of a large boiler, Garth entered the chamber thru a small opening used for that purpose in order better to clean out the ashes. The ashes, although the fires had been smothered for some hours, were still so hot that Garth was so badly burned, when some of the ashes fell or caved in on him, that he died a short while later.
He had been employed around the mill as a general laborer for some time, although his experience about the boilers, of which there were three large ones, was limited. The accident occurred at noon on Sunday. Garth

had gone to work at six P. M., Saturday and at the end of his twelve hour shift, six o'clock Sunday morning, he had elected to continue working overtime. At this time the boilers were shut down and while they were cooling off he and the fireman with and under whom he worked, another and more experienced hand, Mack Robinson, were instructed to clean out the ashes, which accumulated in large quantities. The proof is that his instructions were to do this when and so long as the ashes were hot by using a rake and shovel; that, however, a thorough cleaning could not be accomplished without entering the combustion chamber, which was some five or six feet square. The proof further is that it was not regarded as safe to enter the chamber until about twenty-four hours' time had been given for cooling of the ashes. The defense of wilful misconduct is based on Garth's entering the chamber after a lapse of only six hours, contrary to orders and warning.

It appears that after applying himself to the work for some hours, and apparently realizing that the cleaning was not progressing satisfactorily, he looked into the combustion chamber and expressed the opinion that he could safely go in and thus advance and perfect the job. Robinson says he warned him against doing so, but he crawled thru the small opening used for this purpose and, after a few minutes, some of the banked hot ashes fell on and burned him badly. He crawled out and was carried to the hospital. The superintendent of the plant says he passed thru this boiler room early that morning and told these Negro men to clean out the boilers with the rake and shovel, but not to enter the chamber.

The trial Judge found that Garth did not appreciate the danger, and there is evidence to this effect, the in-

sistence being that he was (1) lacking in that experience and knowledge which would have warned him, and (2) that such instructions or warnings as were given him by his superiors were not conveyed to him in such manner as to impress him with the danger. There is evidence to support both of these insistences, apparently the view of the trial Judge.

Counsel for defendants cite and rely on Code, section 6861, and the holdings of this Court in *Brown* v. *Birmingham Nurseries*, 173 Tenn., 343, 117 S. W. (2d), 739; *Nashville, C. & St. L. Ry.* v. *Coleman,* 151 Tenn., 443, 269 S. W., 919; and *Collins* v. *Brier Hill Collieries,* 158 Tenn., 317, 13 S. W. (2d), 332.

Analysis of these cases suggests pertinent distinctions as bearing on the essential element of wilfulness. In each of them the employee was motivated by self interest. In the Collins case ''the employee disregarded the orders of the foreman in order to serve his own interests by avoiding the necessity of additional work.'' This tended to support the conclusion that his disobedience and misconduct was *willful.* So, in the Brown case, the conduct of the employee, despite instructions and warnings, which resulted in his injury, was in no sense in the interest of his employer and could serve no such purpose. He was considering his own comfort and convenience exclusively, with no possible benefit to his employer in mind. This, again, tended to sustain the view that his misconduct was willful. And in the Coleman case the employee was consulting preferentially his own wishes and convenience.

In this regard the conditions here are quite different. This Negro helper, after working for some hours from the outside with rake and shovel, and finding that he

could not thus accomplish the results he knew to be desired by and to the interest of his employer, looked, literally, into the situation and deciding that the cooling had progressed sufficiently to permit of his entering the combustion chamber safely, although his companion in the work thought otherwise, proceeded, in furtherance of his master's interests, into the chamber. Granting that he had been given and understood the instructions to confine his work to the outside, the inference on this record is reasonable that he concluded that sufficient time had by then elapsed to warrant his going further, in order to accomplish a result which the record shows could not be effected otherwise. There was no doubt on the evidence in the cases above cited that (1) the danger was so obvious as necessarily to be appreciated by any reasonably prudent man, and that (2) the orders violated had been both clearly given and fully understood.

Not only does willful connote intentional, purposeful violation of orders, as said in *Brown* v. *Birmingham Nurseries, supra*, but also an element of perverseness. We are unable to say that the trial Judge is not sustained by material evidence in holding that these elements do not appear here.

It should be borne in mind that by the terms of the statute the burden of proof is on the employer to sustain this defense; also, that this Court has held that not every disobedience of orders constitutes willful misconduct barring recovery under the compensation Act, Code 1932, section 6851, *et seq. Kennedy et al.* v. *Columbian Casualty Co.*, 163 Tenn., 312, 43 S. W. (2d), 201, citing *Kingsport Foundry & Machine Works* v. *Sheffey*, 156 Tenn., 150, 299 S. W., 787, 788, wherein the distinction in application of the rule is drawn between cases of de-

parture from the scope of one's employment and violations while acting within such scope, it being said that in the later cases, "a mere disregard of the order does not become 'willful misconduct,' unless the disobedience is in fact willful or deliberate, and 'not merely a thoughtless act on the spur of the moment,' " as had been said in *Leonard* v. *Cranberry Furnace Co.*, 150 Tenn., 346, 265 S. W., 543.

In Bradbury's Workmen's Compensation Law (3 Ed.), p. 531, where numerous decisions on the subject are collected and discussed, it is said: "No general rule of law can be established defining accurately what constitutes willful misconduct. The question is one of fact, and must be determined by the facts presented in each particular case. The conduct must be wilful, which means that it must be intentional; that is, deliberate, with an exercise of the will, as opposed to accident, negligence, inadvertence, and thoughtless acts on the spur of the moment, or an error of judgment."

This statement of the rule is quoted in an opinion discussing the question of willful misconduct in *Baltimore Car Foundry Co.* v. *Ruzicka*, 132 Md., 491, 104 A., 167, reported in 4 A. L. R., 113; and the annotation following this case, page 118, cites numerous decisions on the point. It appears therefrom to be well established that disobedience of orders will not cut off the right to compensation, unless the disobedience was willful. In *Nickerson's Case*, 218 Mass., 158, 105 N. E., 604, Ann. Cas. 1916A, 790, it was held that the act of a painter in working near machinery while it was in motion, contrary to an order that the painting be done during the noon hour, when the machinery was stopped, should not be regarded as "serious and wilful misconduct," within the provi-

sions of the Massachusetts Workmen's Compensation Act (Stat. 1911, chap. 751, amended by Stat. 1912, chap. 571); the court observing that willful misconduct "is a very different thing from negligence, or even from gross negligence," and "the fact that the injury was occasioned by the employe's disobedience to an order is not decisive against him. To have that effect, the disobedience must have been willful."

It might well be held here that this employee acted impulsively, rather than deliberately, committing an error of judgment, in what he regarded as the demanded interest of his employer; that while he violated the letter of the orders given him for his protection, he did not consciously violate the spirit, having in mind the result desired to be accomplished, and believing that he was proceeding safely.

The judgment must be affirmed.