Early Hoodenpyle and C. E. Phipps, d/b/a Pine Hill Mining Company *v.* Mrs. Lucille Patterson.

(*Nashville,* December Term, 1954.)

Opinion filed March 11, 1955.

Moore & Moore, of Chattanooga, for appellants.

O. W. McKenzie, of Dayton, and T. A. Greer, of Dunlap, for appellees.

Mr. Justice Tomlinson delivered the opinion of the Court.

Mrs. Patterson's husband was killed under circumstances which entitled her, in the opinion of the Trial Judge, to compensation from his employer under the Workmen's Compensation Act. That employer was Early Hoodenpyle and C. E. Phipps d/b/a Pine Hill Mining Company. They have appealed.

A motion is made by Mrs. Patterson to strike the bill of exceptions and dismiss the appeal on the ground that these documents were not perfected and filed within the required time. The appeal bond and the bill of exceptions

were approved and filed on January 17 and February 16, respectively, of 1954. The merits of the motion depend upon whether final judgment was entered on November 24, 1953, as insisted by Mrs. Patterson, or on January 18, 1954, as insisted by Messrs. Hoodenpyle and Phipps.

The Trial Court adjudged the correct date to be January 18, 1954. Accordingly it overruled a motion made in that Court for an order dismissing the appeal.

There is an entry on the minutes of the September 1953 term of a purported judgment signed by the Trial Judge, bearing the endorsement of the Clerk that it was "filed in my office this 24th day of November, 1953—Minute Book I, page 364". Immediately following, and as a part thereof, there is copied the entire motion for a new trial, followed by an order overruling it, and allowing the appeal in question. Then follows over the signature of the Trial Judge the expression "examined and approved January 18, 1954."

Immediately following the above minute is one entitled "Order extending time", reciting that the

"case being tried but undetermined at time for adjournment of this term of Court it is ordered that the term be extended and continued for all purposes of entering judgment and disposing of this case the same as if such new term had not arrived."

The judgment in controversy was signed by the Judge after being approved by the lawyers on all sides. It was then taken to the clerk of the Court and accordingly marked by him as filed November 24, 1953. Thereafter, and within less than thirty days, as we understand the minutes, the Judge wrote a letter to the clerk telling him not to enter the judgment on the minutes until the first day of the January term. The Clerk had already typed it on the minutes. In this plight of the matter the at-

torneys for Hoodenpyle and Phipps drew an X through the pages of the Minute Book on which this judgment had been copied, and that was the condition of that minute entry when the Judge wrote thereon with reference to the minutes of the September term "examined and approved January 19, 1954."

Mrs. Patterson's motion in the Circuit Court on January 14, 1954 to dismiss the appeal for the reasons stated was denied by the Circuit Court on the ground that "apparently nothing was entered of record in this matter until the first day of the January term".

Some time after the appeal bond and bill of exceptions had been filed, and after the record had been certified to this Court, the attorneys for Hoodenpyle and Phipps discovered that the judgment in question had not been entered by the Clerk on the January minutes. Hence, their view of the matter was, and is, that there had been no entry of a judgment in the case from which an appeal might be had. So, they filed a petition in the Circuit Court for the entry of a judgment nunc pro tunc as of the first day of the January 1954 term, and for the Clerk to thereafter certify the record, so supplemented, to this Court.

The petition was granted and the judgment entered nunc pro tunc with the recitation that:

"It appearing that the form of judgment entered on the September 1953 Minutes of this Court had been stricken when said Minutes were examined and approved on January 19, 1954; and that order was entered on the September 1953 Minutes extending the term and continuing the case to the January 1954 Term; and that motion to dismiss the appeal filed January 18, 1954 because said appeal was not filed within thirty (30) days from November 25, 1953 was overruled because no judgment was entered of record

in November; and that the Clerk failed to enter the judgment on January 18, 1954, being the first day of the January 1954 Term as ordered to do by the Court.''

The position of Mrs. Patterson is that the Circuit Judge was without authority to so alter (allegedly) the minutes of the September Term some months after the close of that term. This position is rested upon the fundamental rule that the minutes of the Court speak for themselves and are not to be amplified or explained by extraneous evidence.

■ But in the case at bar, the minutes of the September term were such that their speaking is, to say the least, incoherent. No one can say with a feeling of certainty just what they do say. By reason of that ambiguity, it was proper to explain the same by extraneous evidence, according to *Gregory* v. *Trousdale County,* 194 Tenn. 670, 672, 254 S. W. (2d) 753.

Whether the Court may go further in amplifying or explaining the meaning of its own minutes than by the interpretation of that which is already upon the files or records of the Court need not be decided here because there is in this case something in the minutes which authorizes the correction, we think. There is the order on the September minutes reciting that the case was undetermined ''at time for adjournment of this term of Court''; hence, that the term be extended ''for all purposes of entering judgment and disposing of this case''. And there are on the face of the September minutes purporting to be a final judgment marks which may reasonably be construed as a means adopted to take off of the minutes a judgment which the Court says the Clerk erroneously entered.

██ Since "every Court is the exclusive Judge of its own record, and is competent to make them speak the truth as to its own proceedings", where ambiguities of this character exist, *Davis* v. *Jones,* 40 Tenn. 603, 604, this Court is of the opinion, the existence of some obstacles notwithstanding, that the trial court was authorized to so explain in effect the September minutes, and to enter the nunc pro tunc judgment on the following January minutes. Hence, the appeal was perfected in time, and the bill of exceptions was properly authenticated and filed in time so as to make it a part of the record to which this Court may look in determining the assignments of error directed to the evidence.

Deceased was working at the time of the fatal accident as a miner in a coal mine which was being operated by Hoodenpyle and Phipps. A large rock from the roof of the "room" in which he was working fell on, and killed Patterson. It is stated in the findings of the trial court that the employer concedes that Patterson's dependents are entitled to the award provided by the statute unless his death "was caused by his wilful misconduct in violation of orders made for his own safety".

The misconduct interposed as a defense by the answer of the employer is that their foreman inspected Patterson's working place the day before the accident and found it to be in a dangerous condition; therefore, this foreman directed Patterson "not to shoot down any more coal, and not to load some coal then shot down until he placed a prop or mine timber under the loose rock overhanging the coal" and that on the next day in violation of these instructions Patterson "shot down more coal at the face and was killed by loose rock falling on him as he was loading the coal which he had shot down into a mine car". This answer further avers that within an hour before he

was killed another "safety man" of the employer "directed him to get out, and not work under that bad roof, which he agreed to do."

The foreman referred to in the answer as being the one who gave Patterson directions on the day before the accident testified as a witness for the employer that he, the foreman, discovered a loose rock overhead "in the farther part of the room" and told Patterson not to shoot any more coal "in that part of the room or load any coal under this rock without timbering up this rock", but that there was coal and work to be done in this room "other than the area which included this rock". He said that he "did not know what Patterson was doing at the time of the accident".

Foreman White, supra, was absent on the day of the accident until about the time the body of Patterson was found. He placed in charge as foreman during his absence a man by the name of Edgar Brown. Brown said that he delivered five empty coal cars to Patterson that day and four of them were loaded by Patterson. About 2:30 P.M. he noticed the roof to be "cracking and chipping off" and instructed Patterson to get his tools out and go home. Patterson expressed the thought that maybe the room was not dangerous, but said "I believe I will" and "brought his tools towards the entry".

One-half hour later, that being quitting time, Patterson was found dead under this rock. He was at the back of the room near a car which had been partly loaded. This witness said that "it was impossible to determine just what Patterson was doing at the moment the accident happened but that it did not appear that Patterson had put off any shots in the room that day".

One of the employers, Mr. Hoodenpyle, testified that he "was unable to determine whether Patterson was in

the act of loading coal at the time of the accident or not, and that it was impossible to so determine''.

The Trial Judge, in finding the facts in favor of the petitioner, the widow of Patterson, said this:

''The burden is on the Defendants to show by the weight of the evidence that his death was brought about by Patterson's wilful misconduct.

''The Court [doesn't] feel that it can say that because he was found dead under this rock that this defense is made out. To do so, would rule out momentary forgetfulness, inattention, and all beside wilful misconduct.''

The affirmative evidence is that he violated no instruction of White, his foreman, on the day prior to the accident. The evidence is that he made no shot in the room that day. The inference deducible from the fact that he had taken his tools to the entry of the room shortly before he met his death in the back part thereof is that he was not loading coal at the time of the accident.

We turn now to the question of whether he violated any instructions given him by Brown, his foreman on the day of the accident. In response to Brown's directions given at 2:30 P.M. that he get his tools out and go home, Patterson replied that he would and ''brought his tools towards the entry''. This is evidence, not only of an intention to comply with the instructions of Brown, but, moreover, an act being done in compliance therewith. There is no evidence as to why he felt it necessary to go back into the room where his body was found thirty minutes later.

██ ██ Before compensation can be denied under the Workmen's Compensation Law for misconduct it must appear that such misconduct, if any was wilful, and the burden of proof is on the employer if he invokes this

defense. Code, Section 6861. The word "wilful", as so used in this provision of the statute, means that the conduct in question " 'must be intentional; that is, deliberate, with an exercise of the will, as opposed to accident, negligence, inadvertence, and thoughtless acts on the spur of the moment, or an error of judgment.' " *American Mut. Liability Ins. Co.* v. *Garth,* 174 Tenn. 297, 302, 125 S. W. (2d) 140, 142.

Whether there was misconduct, and if so whether it was wilful, is a question of fact, and must be determined by the evidence presented in the case under immediate consideration. American Mut. Liability Ins. Co. case, supra.

In the light of the evidence in this immediate case we find ourselves in the exact position of this Court on this fact question in the above mentioned American Mut. Liability Insurance Company case, supra, where the Court observed that it was unable to say that the trial judge was not correct in holding that the elements of wilful misconduct do not appear in the evidence. To the contrary, there is material evidence that the employee was not guilty of wilful misconduct within the premises. For each reason, we are not allowed to disturb the trial court's findings and judgment thereon.

Affirmed with costs adjudged against appellants.