Alma G. WHEELER

v.

**GLENS FALLS INSURANCE COMPANY
and the City of Oak Ridge.**

Supreme Court of Tennessee.

July 15, 1974.

Rehearing Denied Aug. 26, 1974.

------◆------

E. Bruce Foster, Jr., Ronald C. Koksal, Frantz, McConnell & Seymour, Knoxville, for appellants.

H. Calvin Walter, Walter, Gilbertson & Claiborne, Knoxville, for appellee.

## OPINION

McCANLESS, Justice.

This is a workman's compensation case in which the employee, Joseph G. Wheeler, sustained an injury from a fall in the course of his employment, but in which death resulted from complications arising out of chronic alcoholism. The case raises three distinct issues: whether there was material evidence to support the trial court's judgment awarding compensation benefits to Wheeler's widow; whether the injury was the proximate cause of the death for which plaintiff seeks compensation benefits; and whether decedent's heavy drinking amounted to "willful misconduct", thus barring recovery under the Tennessee Workmen's Compensation Law.

The record in the trial shows that Wheeler, an Oak Ridge policeman, was injured on January 13, 1970, when he slipped on an icy street and fell on his back. The fall aggravated degenerative arthritis in his back and neck, resulting in extreme pain in these areas. Wheeler continued to work until January 24, when the pain forced him to stay home until February 20, 1970. His return to work lasted only two days, when the pain forced him to quit again. He returned on April 6, 1970, but on this day was able to work for only two hours. For these periods, a total of ten weeks, the defendant, Glen Falls Insurance Company, paid the decedent temporary total disability benefits.

At the time of his injury, the decedent had a history of alcoholism and its related diseases. The family physician, Dr. Charles Gurney, first saw him in 1965 and found evidence of alcoholism. Wheeler was hospitalized in the Oak Ridge Hospital in 1966 and was found to have pancreatitis and cirrhosis of the liver. He was hospitalized again in 1967 and the same diseases were diagnosed. The record shows that the decedent was drinking heavily at this time as a result of marital difficulties.

There is no medical record of any treatment of these diseases between his discharge from Oak Ridge Hospital in 1967 and the injury in January, 1970. Following Wheeler's absences from work because of pain resulting from his accident, he was admitted to Oak Ridge Hospital again on April 27, 1970. He had been drinking heavily, according to the testimony of his wife, to relieve the pain in his back and neck. Shortly after admittance, he was treated for acute delirium tremens. His doctors again found pancreatitis and cirrhosis to be present. After his discharge, Wheeler was found to have a marked enlargement of the liver on July 1, 1970. On July 23, 1970, he was admitted to the hospital in a comatose state. He died early the next morning. Dr. Alex Carabia, who performed the autopsy, stated that the immediate cause of death was "acute necrotizing pancreatitis, and he has as a contributing factor bilateral lobular pneumonia, and also cirrhosis of the liver."

The widow, Alma G. Wheeler, filed this action seeking medical and funeral benefits, and maximum benefits as decedent's widow under the Workmen's Compensation Law. The trial judge of the Law and Equity Court of Anderson County allowed the maximum benefits. Defendants prayed for and were granted this appeal.

The first two assignments of error arise out of the basic disagreement between the parties as to the cause of death and its relation to the injury. The plaintiff contends that her husband drank heavily, and

unintentionally precipitated his own death in order to alleviate the pain and despair which resulted from his injury. The defendants contend that Wheeler's death resulted from longstanding alcoholism which originated before the decedent's compensable injury, and which was unrelated to the injury.

■ We are unable to agree with the defendants in their first assignment, that is, that the record contains no material evidence to support the judgment of the trial judge in upholding the plaintiff's theory of the case. While we agree that the decedent had a background of alcoholism before the injury, we are persuaded by testimony in the record that his consumption of alcohol increased greatly after, and as a direct result of, the injury. His widow testified, for example, as follows:

"Q Now Mrs. Wheeler, prior to that time (the injury), was your husband in good health?

"A Well, he seemed to be yes.

"Q And working regularly?

"A He did.

"Q And let me ask you concerning his drinking habits. Was he a social drinker? Did he drink prior to the accident?

"A He drank some.

"Q Did he drink very much?

"A Not too much.

"Q Now after this accident, did he have quite a bit of difficulty?

"A He was in very much pain.

"Q And to alleviate the pain, what, if anything, did he do?

"A He drank a right smart.

. . . . . .

"Q Mrs. Wheeler, after this accident just tell what kind of problems your husband was having?

"A He was in a lot of pain. He couldn't rest and he couldn't sleep. He complained of his back and his neck.

"Q And did he take any drugs?

"A Well, he'd take some doctor medicine, whatever the doctor gave him to take.

"Q What else did he do to try to relieve his pain?

"A He drank.

"Q Did he drink quite a bit during that period of time?

"A Yes, he did.

"Q Did he continue drinking to up just prior to his death?

"A Yes, he did."

Moreover, expert medical testimony revealed that the condition of the decedent's liver remained about the same between 1966 and 1970, but that after the injury and its resultant pain, the condition of the liver rapidly worsened. Dr. Gurney, among others, testified that the progression of cirrhosis of the liver is measured by the organ's descent below the lower margin of the rib cage as a consequence of fatty infiltration caused by heavy drinking. When the decedent was hospitalized in 1967 the measure of the liver's drop below the ribs was about four finger breadths. The measure was still four finger breadths when he was examined shortly after his injury in 1970. Just before his death, however, the decedent's liver descended to eight finger breadths. Thus, in a period of less than seven months after the injury, the liver had absorbed enough fat to have dropped twice as far as it had during the previous three years.

Dr. John P. Crews also testified to the effect that such a marked increase in alcoholic intake over a short period of time could cause an early death:

"Q Well, if a person came along and he drank, say he was a—drank pretty

regularly, you might call him an alcoholic, but for some reason or other during the last three or four months of his life he drank extremely heavy, that would cause him to die sooner than if he continued in his normal pattern of drinking, wouldn't it?

"A That's a hard one to answer. Certainly if he, you know, drank enough, there's no question.

"Q The Doctor, let me ask you a question: Assume for a fact that this man did drink prior to the accident of January, 1970, and that he was hospitalized several times, attempted to go back to work unsuccessfully, but that as a result of the increased pain, and as a result of his concern about not being able to go back to work he did in fact drink considerably more between the period of January, 1970, and July, 1970, the time of his death, in your opinion did the fact that he drank more heavily during that period of time cause him to die as much as one day earlier than had he continued his normal pattern of drinking?

"A I think this would be a reasonable assumption, yes."

There was also testimony from the decedent's fellow employees that no signs of heavy drinking or pain had been noticeable before the accident, and that such signs had become apparent after the accident.

We think the above testimony from the decedent's wife, doctors, and fellow employees is material evidence to support the trial court's conclusion that, while the decedent was an alcoholic before the accident, the injury precipitated a flurry of heavy drinking which drastically deteriorated his condition and resulted in death. The first assignment is overruled.

■ Defendant's second and third assignments of error both stem from the employee Wheeler's failure to heed the warnings made by his doctors that continued drinking could eventually lead to his death.

The record makes it clear that these warnings were made to the decedent on more than one occasion. He was also advised by one physician that his heavy drinking could be contributing to the muscle pain in his shoulders. Defendants contend that this behavior by the decedent either, first amounted to "intentional conduct" which broke the chain of causation between the injury and the death; or second, amounted to "willful misconduct" which barred recovery under Section 50–910, T.C.A.

The first issue challenges the proposition that the work-related injury was the proximate cause of the death, which it must be in order for the plaintiff to recover. The general rule is expressed in 1 Larson, Workmen's Compensation Law, Section 13.00 at 3–279:

"When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."

There is no question in this case but that the death of the employee was causally related to the injury, assuming momentarily no intentional conduct on his part. In fact, we have already determined this causal connection in a case with similar facts, Fennell v. Maryland Casualty Co., 208 Tenn. 116, 344 S.W.2d 352 [1961]. There the employee suffered an on-the-job injury and began drinking to relieve the subsequent pain. As a result of his drinking combined with a state of malnutrition, the employee died. The court awarded his widow compensation because of the unbroken chain of causation emanating from the injury: he was injured on the job, the injury caused great pain, medicine did not relieve the pain, decedent drank to relieve the pain, and he died from the intake of alcohol. In short, the court reasoned that, but for the injury, the employee would not have died when he did.

Defendants argue, however, that the Court in Fennell v. Maryland Casualty in pronouncing its conclusion relied partially on the fact that the employee "did not know that it was dangerous to his life to take either the drugs or the whisky when he was suffering from malnutrition . . ." Fennell v. Maryland Casualty, supra, 344 S.W.2d at 355. The contention is that had Fennell been warned of the danger and had he continued to drink in spite of the warning, his actions would have constituted an independent intervening cause, breaking the chain of causation.

Defendants likewise cite the *Fennell* case in support of their contention that the employee's drinking constituted "willful misconduct" or "self-inflicted injury" within the meaning of Section 50–910, T.C.A., which provides in pertinent part:

"No compensation shall be allowed for an injury or death due to the employee's willful misconduct or intentional self-inflicted injury . . .."

The nature of the "intentional" conduct defense is such that each case must be decided on its own facts, according to our understanding of the cases. For that reason, the *Fennell* case is not helpful, for no intentional conduct of any kind was involved there. There is a vast array of conduct by the claimant which has not been held to have defeated compensation. Among these are accident, negligence, inadvertence, thoughtlessness, error of judgment, or even recklessness. Hoodenpyle v. Patterson, 197 Tenn. 621, 277 S.W.2d 351 [1955]; Coleman v. Coker, 204 Tenn. 310, 321 S.W.2d 540 [1959]. In short, any conduct which does not rise to the level of wilfulness or deliberateness will not be considered an independent intervening cause. 1 Larson, supra, Section 13.21 at 3–315 et seq.

In our opinion, the evidence in this case reveals the conduct of the employee Wheeler to be below that which would comprise an intervening, willful intent. The contention of the defendants necessari-ly assumes that the decedent was a person who was warned not to drink, who understood that warning and its consequences, and who had the ability to make a rational and deliberate choice to violate the prohibition. We cannot, in the face of all the evidence, make the assumption that a chronic alcoholic could meet all these conditions. The evidence paints the picture of a man who drank, not out of a perverse intent to ignore his doctors' advice, but because the pain, despair, and idleness resulting from his injury forced him to do so. The record reveals that the medication prescribed to alleviate his pain was ineffective, as it was in the *Fennell* case. Also, we note that Wheeler chose to drink in the face of warnings that it could lead to his own death. We find it difficult to assume from that fact that the decedent willfully and deliberately chose to make that decision. Rather, it seems more to be the choice of a person who, as a chronic alcoholic, was yielding to a natural inability to resist the lure of alcohol. In short, we feel that the evidence indicates that Wheeler had no reasonable control over his decision to continue drinking.

■ We take judicial notice of the fact that chronic alcoholism can carry with it an irresistable and uncontrollable desire to drink alcohol, and that a substantial school of thought supports the proposition that alcoholism is a disease. See the discussion of alcoholism in Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 [1968], and the dissent which quotes with approval at 88 S.Ct. 2169:

"[T]he main point for the nonprofessional is that alcoholism is not within the control of the person involved. *He is not willfully drinking.*" A. Ullman, To Know The Difference 22 [1960]. (Emphasis added.)

■ Of course, the record does not disclose as fact that Wheeler had this tendency. But we think the inference is reasonable from the evidence that he did have it. The defendants have not proved other-

wise, though they carry the burden of proof that the conduct of the claimant was willful to the point of defeating compensation. Hoodenpyle v. Patterson, supra 227 S.W.2d at 354; Section 50–910, T.C.A. Even in cases where the evidence allows inferences which could support either party, we are bound by the strong public policy of our Workmen's Compensation Law to resolve conflicts and doubts in favor of the claimant. Section 50–918, T.C.A.; Curtis v. Hamilton Block Co., Inc., 225 Tenn. 275, 466 S.W.2d 220 [1971].

We are likewise influenced by the lack of evidence in the record that the decedent, who was unquestionably a chronic alcoholic, had full comprehension of the warnings from his doctors. The only testimony on this question came from this question to Dr. Gurney by defendants' counsel:

"Q Do you think he understood the counseling you gave him about the likely consequences of continuing to drink?

"A Well, that's a theoretical question. The only thing I could do was commucate to him in the simplest way I could, assuming he could comprehend and understand what I was getting at."

This case is analogous to those in which an injury aggravates a pre-existent disease or condition, and that disease or condition eventually causes death. We have previously held, for example, that the death of an employee who had cancer, when the injury accelerates the growth of the disease until it results in premature death, is compensable. Boyd v. Young, 193 Tenn. 272, 246 S.W.2d 10 [1951]. This decedent had a history of excessive drinking in times of stress, as he had done in 1966–67 when he and his wife were temporarily separated, and had proved on that occasion that he was unable to heed the advice of his physician to quit drinking. Of course, an employer must take his employees as he hires them, assuming the risk that he may have a condition such as alcoholism or can-

cer which could be aggravated by an injury that would have consequences greater than those that would be suffered by an otherwise healthy employee. Swift & Company v. Howard, 186 Tenn. 584, 212 S.W.2d 388 [1948].

In our opinion, defendants have not proved sufficiently that the conduct of the employee was intentional, willful or selfinflicting, and in fact, the evidence raises a presumption to the contrary. The judgment of the trial judge is affirmed.

DYER, C. J., CHATTIN, J., and LEECH, Special Justice, concur.

FONES, J., dissents.

FONES, Justice.

I respectfully dissent.

This employee's death was not the natural consequence of the work injury which he sustained. It was the direct result of an independent, intervening cause attributable to his own intentional conduct, to-wit: he drank himself to death.

I would reverse and dismiss the suit.

## OPINION ON PETITION TO REHEAR

McCANLESS, Justice.

The appellants, Glens Falls Insurance Company and the City of Oak Ridge, have filed their petition to rehear in accordance with Rule 32 of the Tennessee Supreme Court. The thrust of the petition is to urge this Court to reconsider its analysis of the evidence presented in the record and the conclusions drawn therefrom; to reconsider cases which the Court studied in making the decision in this case; and once again to reargue the equities of the result

reached by the Court. None of these come within the purview of the petition to rehear. Rule 32 provides in part:

"A rehearing will be refused where no new argument is made, and no new authority adduced, and no material fact is pointed out as overlooked."

As we observed in Sullivan v. Harpeth Development Corporation, 218 Tenn. 107, 401 S.W.2d 195, 199 [1966]:

"Now, the office of petition to rehear is to call to the attention of the Court matters overlooked; not to re-argue those things which the losing party supposes were improperly decided, after the Court has given the same full consideration. This Court has said, and says again, that a petition for a rehearing should never be used for the purpose of re-arguing the case on the points already considered and determined; unless some new and decisive authority has been discovered, which was overlooked by this Court."

The burden of proof is of concern to the appellants. They admit they had the burden of proving wilful intentional conduct by the deceased under Section 50–910, T. C.A. On the issue of whether the original injury was the proximate cause of the subsequent death of plaintiff-appellee's husband, appellants insist the burden should have been cast upon the plaintiff; however, as we held in our opinion, the evidence reveals that the death of the deceased directly resulted from his on-the-job injury. Defendants argued that his conduct amounted to an "independent intervening cause", the burden of proof of which was upon the appellants, but which they failed to carry.

The petition to rehear is denied.

DYER, C. J., CHATTIN, J., and LEECH, Special Justice, concur.

FONES, J., dissents.