# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 9, 2003 Session

## ROYAL INSURANCE COMPANY v. R & R DRYWALL, INC. AND TENNESSEE DEPARTMENT OF COMMERCE AND INSURANCE

### Appeal from the Chancery Court for Davidson County
No. 01-1378-II     Carol McCoy, Chancellor

---

### No. M2002-00791-COA-R3-CV - Filed June 6, 2003

---

A workers' compensation insurance carrier assessed a retrospective premium increase of over $60,000 against a contractor after auditing the company's books and finding evidence that its subcontractors employed more workers than the contractor had declared. The contractor filed an administrative appeal of the assessment, arguing that the additional workers were not actually employees of its subcontractors, but members of de facto partnerships, and thus not covered under the contractor's policy. The administrative law judge agreed, and found that the contractor was not liable for the additional premium. The Chancery Court of Davidson County reversed the administrative law judge, finding that the insurance company was entitled to the additional premium, because it had borne the risk of liability to those workers for on-the-job injuries. We affirm the Chancery Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and RUSS HELDMAN, SP. J., joined.

Lawrence B. Hammett, II and H. Brent Patrick, Nashville, Tennessee, for the appellant R & R Drywall, Inc.

Blakeley D. Matthews and Kristen Murphy Anderson, Nashville, Tennessee, for the appellee, Royal Insurance Company.

### OPINION

#### I. A RETROSPECTIVE PREMIUM

R & R Drywall ("R & R") is a Middle Tennessee corporation that hangs, mounts and finishes drywall on both commercial and residential projects. Royal Insurance Company ("Royal") is R &

R's workers' compensation insurance carrier. The drywall contractor relies upon subcontractors to perform the actual work. In the fall of 1998, the insurance carrier notified R & R that it wished to audit the contractor's payroll and employee records for the previous policy year.

The insurer determined from the audit that five of the forty subcontractors paid by R & R earned too much for it to believe that they were operating by themselves. The insurer reasoned that the excessive payments indicated that the five subcontractors were themselves paying employees, and that if any of those employees was injured on the job, the insurer would be liable to pay compensation, in accordance with the provisions of Tenn. Code Ann. § 50-6-113(a), which reads,

> A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal, intermediate contractor, or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

Royal Insurance concluded that the premium it had previously assessed against R & R did not adequately match its potential liability, and it assessed an additional premium of $61,802 to more accurately reflect the risk it had been exposed to.

R & R filed an appeal of the assessment with the Tennessee Workers' Compensation Appeals Board. The Board upheld the assessment of the additional premium. The contractor then filed an appeal with the Department of Commerce and Insurance, pursuant to the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-101, et seq. An Administrative Law Judge (ALJ) heard the case on stipulated facts. At the hearing, the contractor contended that the five subcontractors were partnerships, and therefore that Tenn. Code Ann. § 50-6-113(a) did not apply and the additional assessment was not valid.

Unlike employees, sole proprietors and partners are not subject to mandatory coverage under the workers' compensation statutes. *See* 50-6-113(f). R & R claimed that all those working under the five subcontractors at issue were partners with that subcontractor, with all monies paid to the subcontractors divided between the partners. The ALJ agreed. On February 15, 2001, he filed an order which reversed the decision of the Appeals Board, and withdrew the additional premium. Royal then filed a Petition for Reconsideration of the ALJ's decision. There was no response to the petition by the ALJ within twenty days, and so his order became final and subject to judicial review pursuant to Tenn. Code Ann. § 4-5-322.

## II. PROCEEDINGS IN THE TRIAL COURT

On April 30, 2001, Royal filed a petition in the Chancery Court of Davidson County to review the final order of the ALJ. The insuror noted that the purported partners did not execute any documents prior to the assessment of the additional premium to establish the existence of the alleged partnerships, and contended that the assertion of partnership was a subterfuge to evade the mandatory requirements of the workers' compensation law. The contractor argued to the contrary that under

general principles of partnership law, no particular form of contract is required to establish a legal partnership, and that an informal "handshake agreement" between the drywall workers was sufficient.

The Chancellor agreed with the insuror (and with the prior ruling of the Workers' Compensation Appeals Board), and reversed the ALJ. In its Memorandum and Order, the trial court held that the resolution of the case was controlled not by the general principles of partnership law as the ALJ had ruled, but by the specific mandates of the workers' compensation statutes in favor of the broadest possible coverage for workers. R & R was ordered to pay the disputed premium. The insuror subsequently filed a motion for the trial court to amend its order by awarding pre-judgment interest. The trial court granted the motion. This appeal followed.

## III. ANALYSIS

There was no dispute as to the facts in this case, but only as to the legal conclusions to be drawn from those facts. We review those conclusions de novo, with no presumption of their correctness. *See Memphis Publishing Co. v. Cherokee Children & Family Services, Inc.*, 87 S.W.3d 67 (Tenn. 2002); *Brown v. Birman Managed Care, Inc.,* 42 S.W.3d 62 (Tenn. 2001). Since the trial court did an excellent job of summarizing the undisputed facts, we quote the following from its Memorandum and Order:

> Five persons working on R & R Drywall projects each signed and filed a form "I-18" captioned "Election of Non-Coverage by Sub-Contractor." The five I-18 forms were filed before the policy period started. These five workers are (1) Jose Alcazar Aguilar, (2) Lauro Alcazar Aguilar, (3) Eric Putnam Boone, Jr., (4) Silva Garcia Ramiro and (5) Humberto Alvardora. Four of the five indicated they were partners, and had "0" employees, or the number of employees was left blank. One of the five indicated he was a sole proprietor with an unstated number of employees. The five non-covered men were not partners together, but worked separately on R & R Drywall projects with groups of other workers. These five non-covered subcontractors received payment from R & R Drywall for the work done by their group of workers and took responsibility for paying the men in his separate group.
>
> Royal Insurance deducted revenue for each of the five contractors who filed I-18 forms from its workers' compensation insurance premium calculations. However, there were no I-18 forms from men who worked with or for J. Aguilar, L. Aguilar, Bone, Ramiro and Alvardora, until the policy period ended and the audit was being prepared. None of the five partners filed an insurance claim and none of the men working with or for them filed a claim alleging disability or injury related to their work.
>
> The Tennessee Workers' Compensation Appeals Board (the Appeals Board) found that most of the five non-covered partners and workers in their group were

composed of Mexican-American family members, in which only one person reads or speaks English. The English speaking person acts as the lead partner and receives payment from R & R Drywall, then divides the funds among the men with whom he works. The Appeals Board found these groups of Mexican-American workers had no other workers' compensation coverage and that Royal Insurance would in most probability have to pay any claim they filed if they did suffer a work related injury. The Appeals Board found R & R Drywall owed Royal Insurance the additional premium because the workers (but not the five men who signed the I-18 forms) should be characterized as employees and because there was no written documentation of the existence of a partnership arrangement before the policy inception.

After the audit, the other workers executed I-18 forms electing non-coverage, and hand-written statements to the effect that they were all partners who split the proceeds the lead partner received from R & R. Appellant notes that Royal relied upon these documents to exclude the workers from its premium calculations for coverage after the policy period in dispute. The drywall company argues that if the nineteen or twenty workers are partners now, they were surely partners during the policy period as well, and thus not subject to Tenn. Code Ann. § 56-6-113(a).

Appellant relies upon a number of cases where our courts have denied workers' compensation coverage to an injured worker after determining that the claimant should be considered a partner rather than an employee of the insured entity. *Roberts v. Lebanon Appliance Service Co.*, 779 S.W.2d 793 (Tenn. 1989); *Lindsey v. Smith and Johnson, Inc.*, 601 S.W.2d 923 (Tenn. 1980). Appellant insists that these cases indicate that if a claim had been asserted against it for an on-the-job injury, the court would have been obligated to find the workers' compensation carrier not liable. The hidden implication in this argument is that since the ALJ found the workers to be partners, no other conclusion was possible.

The administrative record shows, however, that the ALJ relied on documents that were not in existence during the policy period to reach his conclusion. It appears to us that if one of the subcontractor's workers had filed a claim for an on-the-job injury during the disputed period, he would not have been motivated to execute documents that would have the effect of renouncing his rights to compensation. Despite the appellant's arguments, there is no doubt that the insuror bore the risk of defending R & R against and/or indemnifying it for liability arising from injuries to the subcontractors' workers.

We thus see the contractor as trying to have it both ways. During the disputed policy period, when it was still possible that one of the drywall "partners" could have injured himself on the job, R & R could have invoked the protections of the workers' compensation law and of its policy. Now that the policy period has passed with no claims having been filed, the contractor argues that the workers had no coverage under its policy, and therefore that it should not have to pay an additional premium. As the trial court points out, "[t]he audit to determine the current premium was intended

to examine the actual risk which Royal insurance undertook during the policy period, not a risk which was defined only after the policy period ended."

Tenn. Code Ann. § 50-6-114(a) reads, "No contract or agreement, written or implied, or rule, regulation or other device, shall in any manner operate to relieve any employer in whole or in part of any obligation created by this chapter, except as herein provided." The obligations imposed upon contractors by Tenn. Code Ann. § 50-6-113 were designed to extend the benefits of workers' compensation to employees of irresponsible subcontractors, and to motivate principal contractors to hire insured, responsible subcontractors. *Posey v. Union Carbide Corp,* 705 F.2d 833 (6th Cir. 1983).

We agree with the appellee that the appellant used the late-filed I-18s and hand-written partnership statements as devices to avoid a premium associated with a risk that has now closed. If we were to reverse the trial court as appellant urges, we would be encouraging the use of such devices to undermine the primary purpose of workers' compensation, which is to secure benefits for injured workers. *See Wheeler v. Glens Falls Insurance Co.,* 513 S.W.2d 179 (Tenn. 1979); *Shubert v. Steelman*, 377 S.W.2d 940 (Tenn. 1964).

## IV.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, R & R Drywall.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.