Mary Grace Curtis, Appellee,

*v.*

Hamilton Block Company, Inc., et al, Appellants.

466 S.W.2d 220

(*Knoxville,* September Term, 1970.)

Opinion filed April 5, 1971.

CUNNINGHAM, CRUTCHFIELD & McALLISTER, Chattanooga, for appellants.

BEAN, PHILLIPS, & BEAN, Chattanooga, for appellee.

MR. CHIEF JUSTICE DYER delivered the opinion of the Court.

This is a workmen's compensation case presenting the issue of whether James Curtis (deceased) was, at the time of his death, an employee within the meaning of the Act, or an independent contractor. The trial judge

finding deceased was an employee of Hamilton Block Company, Inc. awarded death benefits due the widow and minor children.

Hamilton Block Company, Inc. (herein referred to as Hamilton) is a large manufacturer of concrete building blocks and allied materials. Prior to 1952 Hamilton both manufactured and delivered their products to their customers. In 1952 Hamilton decided to go out of the business of delivering its products and in furtherance of this decision a separate corporation was organized designated as "Construction Services and Supply, Inc." Hamilton then contracted with Construction Services to deliver its products, paying Construction Services an agreed amount for each block or other material delivered. Construction Services purchased and owned the trucks used to deliver these products and the operators of the trucks were carried as employees of Construction Services. The only part Hamilton had in the delivery of these products was that employees of Hamilton loaded the trucks at Hamilton's plant and directed the truck operators where to deliver its products.

In addition to the agreement with Construction Services, Hamilton also had agreements with four or five individuals to deliver its products on a similar basis as with Construction Services. Hamilton designated these individuals as "contract haulers" and there was a possibility of one earning more as a contract hauler than as an employee of Construction Services, dependent on business conditions. On September 9, 1969, deceased became a contract hauler, and died by accident on December 9, 1969, while delivering Hamilton's products.

Prior to September 9, 1969, deceased was an employee of Construction Services, driving one of their delivery trucks. About this time, John Hill, one of the "contract haulers," desired to change his status to that of an employee of Construction Services. Learning of this deceased went to Mr. Chester Parker, an officer of Hamilton, and asked permission to purchase John Hill's truck. Mr. Parker agreed and deceased changed his status from employee of Construction Services to one of "contract hauler," taking over the John Hill truck. These contract haulers would have great difficulty in financing the purchase of a truck and Hamilton in effect loaned its credit for such purchases. Hamilton made financial arrangements to purchase the truck, taking title to the truck in its name. Mr. Parker stated that this procedure of taking title to the truck in Hamilton's name was used to protect Hamilton on the debt. At the time deceased went to Mr. Parker to get permission to purchase the Hill truck, the title to said truck was in Hamilton's name and so remained during the time deceased used the truck. In fact, the particular truck was being used by Hamilton presumably in the same capacity on the date of the trial, March 16, 1970.

The "contract haulers" would report each working day with their trucks to Hamilton's plant and remain during normal working hours. When Hamilton had a haul for one of the "contract haulers" an order would be written showing the number of its products and the destination and given to the "contract hauler." The "contract hauler" kept a copy of these orders, turning them in to the office once a week to have the amount due him computed and paid. Hamilton deducted from these weekly checks payments due on the truck, or payments on

any other debt due Hamilton. Hamilton did not deduct any sum as withholding or social security nor were these "contract haulers" listed by Hamilton with his workmen's compensation carrier. The "contract haulers" were responsible for the purchase of gasoline and the upkeep on the trucks.

The "contract haulers" wore a designated uniform with Hamilton's name thereon, and the trucks also carried Hamilton's name. Mr. Parker stated Hamilton desired such be done but did not require it. This is done as a part of Hamilton's advertisement and Hamilton paid a part of the cost.

Mr. Parker, when asked what would be Hamilton's action in the event one of these contract haulers was unduly absent when needed, stated: "I may terminate my contract with him."

█ Since there is no material conflict in the factual situation regarding the relationship of the parties the question here of whether deceased was an employee or an independent contractor is one of law. *Brademeyer v. Chickasaw Bldg. Co.,* 190 Tenn. 239, 229 S.W.2d 323 (1950); *Seals v. Zollo,* 205 Tenn. 463, 327 S.W.2d 41 (1959); *Cromwell General Contractor, Inc. v. Lytle,* 222 Tenn. 633, 439 S.W.2d 598 (1969).

Under the terms of our workmen's compensation statutes, T.C.A. sec. 50-918, we are required to give the statute a broad or liberal construction to effect the objects and purposes of the statute. This we have consistently done. *Johnson Coffee Co. v. McDonald,* 143 Tenn. 505, 226 S.W. 215 (1920); *Portin v. Portin,* 149 Tenn. 530, 261 S.W. 362 (1923); *Cherokee Brick Co. v.*

*Bishop*, 156 Tenn. 168, 299 S.W. 770 (1927); *Frost v. Blue Ridge Timber Corporation*, 158 Tenn. 18, 11 S.W.2d 860 (1928); *Seals v. Zollo*, supra.

In *Seals v. Zollo*, supra, on the issue here, this Court stated:

"In determining whether or not claimant in workmen's compensation proceeding was an employee or independent contractor, the Supreme Court has duty to give Workmen's Compensation Act a liberal construction in favor of fact that claimant is an employee, rather than a strict construction. 205 Tenn. at 470, 327 S.W.2d at 44.

In *Frost v. Blue Ridge Timber Corporation*, supra, the Court stated:

The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency of the employee. Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself." 158 Tenn. at 22, 11 S.W.2d at 862.

█ Under the broad or liberal view we are required to take in regard to the factual situation here, we think the trial judge was correct in finding deceased was an employee of Hamilton within the meaning of the Workmen's Compensation Statute, on the ground Hamilton had the power to direct and supervise deceased's work whether this power was exercised or not.

The only practical difference between one delivering Hamilton's products as an employee of Construction Services and as a "contract hauler" was in the case of the "contract haulers" there was a possibility of making more money. Truck drivers for Construction Services came to and remained at work the same hours as "contract haulers" and both delivered Hamilton's products as needed. Employees of Construction Services could be terminated at any time; and in the case of "contract haulers" their contract could be terminated at any time. In either case, the same result is reached. As stated in *Frost v. Blue Ridge Timber Corporation,* supra, this is incompatible with the full control of the work usually enjoyed by an independent contractor.

█ Error is assigned by Hamilton of admission into evidence of portions of the discovery deposition of the witness, Alvin Hale. Evidence here objected to is cummulative and if such admission were error, it was harmless error. As we have stated, there is no material dispute as to the factual situation.

The judgment of the trial court is affirmed.

CHATTIN, HUMPHREYS and McCANLESS, JUSTICES and JENKINS, SPECIAL JUSTICE, concur.