# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON



**FILED**

**Dec. 31, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **BRIAN WOLNEY and WIFE,** | ) | |
| **MELISSA WOLNEY** | ) | |
| | ) | |
| Plaintiffs/Appellants, | ) | Shelby Circuit No. 56764 |
| | ) | |
| **vs.** | ) | |
| | ) | Appeal No. 02A01-9508-CV-00169 |
| **LISA M. EMMONS and WELLS** | ) | |
| **FARGO ARMORED SERVICE** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| Defendants/ Appellees. | ) | |

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS TENNESSEE

THE HONORABLE GEORGE H. BROWN, JR., JUDGE

For the Plaintiffs/Appellants:          For the Defendants/Appellees:

Stanley J. Kline                         Marc O. Dedman
Memphis, Tennessee                       Memphis, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

## OPINION

This is a suit for damages brought by Plaintiff Brian Wolney ("Wolney"), with his wife Melissa Wolney, against Defendants Wells Fargo Armored Service Corporation ("WFA") and Lisa M. Emmons ("Emmons"). Wolney sued for personal injuries he sustained in an accident while riding as a passenger in a vehicle driven by Emmons, but owned by WFA. The trial court granted summary judgment in favor of WFA, finding that Wolney's tort claim against WFA was barred because Wolney was WFA's statutory employee. The Wolneys appeal the grant of summary judgment. We affirm.

The facts are essentially undisputed. Wolney worked as a guard for Wells Fargo Guard Service ("WFG"). WFG had entered into a written Security Services Agreement ("Agreement") with WFA, under which WFG would occasionally furnish guards to WFA. The Agreement provided, in pertinent part:

> 3. **EMPLOYEES:** (a) Personnel supplied by Company [WFG] are its employees and not Client's [WFA]. Company is solely responsible for social security, unemployment and similar taxes applicable to its employees . . .
>
> (c) Client may reasonably remove any employee assigned provided such removal is not in violation of law . . .
>
> 4. **HIRING:** Client agrees that it will not, directly or indirectly, hire or employ any Company employee assigned to Client while such employee is employed by Company or for one year thereafter. . .
>
> 9. **SCOPE OF SERVICES:** This Agreement and written schedule of guard assignments, patrol inspections and post orders, which collectively set forth the Security Services to be performed, may be changed with the written approval of Company. Other amendments to this Agreement must be in writing and signed by the authorized representatives of the parties thereto. If there is any conflict between the terms of any other documents and this Agreement, this Agreement shall control.

Generally, under the Agreement, either Chris Fowler ("Fowler"), a vault supervisor at WFA, or his supervisor, would call WFG and request guard services. Charlie Pegrum ("Pegrum"), the operations manager at WFG, would then find an available guard, notify him of the assignment, and convey any information about the assignment given by WFA. The guard could turn down the assignment, but once it was accepted, he had to complete it. When the guard arrived to work, WFA would give the guard orders as to what tasks to perform and how to perform them.

In this instance, a WFA employee called Pegrum and requested an unarmed guard for duty for two days, providing Pegrum with general information about the assignment. Pegrum then

notified Wolney of the assignment at WFA and gave him an overview of the type of work required. Pegrum told Wolney that he would be riding in the passenger side of a truck and would stay inside and push buttons to let people in and out of the truck. Pegrum told Wolney when WFA wanted him to report to work. Wolney accepted the assignment. His first day working for WFA was uneventful.

When Wolney reported to work at WFA the second day, he was told by a WFA employee to ride in a WFA "bank truck" as an unarmed guard escort, along with two of WFA's own guards. Wolney sat in the front passenger seat of the truck, driven by defendant Emmons. Charles Jones ("Jones"), the messenger guard who was effectively in charge of the truck, sat in the back seat. It was the messenger guard's responsibility to tell Wolney where to sit in the truck and what to do. Wolney's duties were to assist the messenger guard and to stay with the truck while the other guards carried the money in and out of the banks. Later that day, the WFA vehicle in which Wolney was riding became involved in a serious motor vehicle collision, and Wolney was injured.

Subsequently, Wolney filed this suit to recover damages for the injuries he sustained as a result of the accident. Wolney moved for partial summary judgment on this issue of whether he was a statutory employee of WFA. WFA moved for summary judgment, claiming that there was no genuine issue of material fact and that summary judgment was proper as a matter of law. The trial court found that, as a matter of law, Wolney was a statutory employee under the Workers' Compensation Act, Tennessee Code Annotated § 50-6-102(a)(9) (1991 & Supp. 1996), and that his tort action against WFA was therefore barred. Consequently, the trial court granted summary judgment in favor of WFA. The Wolneys appeal the decision of the trial court on this issue.

Summary judgment is proper when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* at 210-11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must

set forth *specific facts* showing that there is a genuine issue of material fact for trial. "If he does not so respond, summary judgment . . . shall be entered against him."

*Id.* at 211 (citations omitted). Summary judgment is only appropriate when the case can be decided on the legal issues alone. *Id.* at 210. Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Johnson v. EMPE, Inc.*, 837 S.W.2d 62, 68 (Tenn. App. 1992). Therefore, our review of a trial court's order granting summary judgment is *de novo* on the record before this Court. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

In this appeal, Wolney argues that he was not an employee of WFA, and consequently, his tort claim against WFA is not barred by the Workers' Compensation Act. Wolney contends that he was an independent contractor rather than an employee.

Under the Workers' Compensation Act, workers' compensation benefits are an employee's exclusive remedy for personal injuries suffered by accident in the workplace. Tenn. Code Ann. § 50-6-108(a)(1991 & Supp. 1996). Thus, if Wolney is deemed an an "employee" of WFA, his common law action against WFA would be dismissed because workers' compensation benefits would be his exclusive remedy. *See Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 948 (Tenn. 1985). However, Tennessee Code Annotated § 50-6-112 permits an employee to bring a common law action for damages against a third party, not his employer. Tenn. Code Ann. § 50-6-112 (1991 & Supp. 1996). Therefore, if Wolney was working as an independent contractor for WFA, rather than an employee, his tort action against WFA would not be barred by the Workers' Compensation Act. *See Barber v. Ralston Purina*, 825 S.W.2d 96, 99 (Tenn. App. 1991).

The Workers' Compensation Act is a remedial statute, to be interpreted in favor of persons entitled to its benefits. Tenn. Code Ann. § 50-6-116 (1991 & Supp. 1996) (providing that the strict construction of statutes in derogation of common law does not apply to the Act); *Curtis v. Hamilton Block Co.*, 226 Tenn. 275, 466 S.W.2d 220 (1971). Consequently, the Act is given a construction that favors a finding that a worker is an employee rather than an independent contractor. *Curtis*, 466 S.W.2d at 222; *Barker v. Curtis*, 287 S.W.2d 43, 46 (Tenn. 1956).

To determine whether a worker is an employee or an independent contractor under the Workers' Compensation Act, the following factors are considered:

(A)  The right to control the conduct of the work;
(B)  The right of termination;
(C)  The method of payment;
(D)  The freedom to select and hire helpers;
(E)  The furnishings of tools and equipment;
(F)  Self scheduling of working hours; and
(G)  The freedom to offer services to other entities;

Tenn. Code Ann. § 50-6-102(a)(9) (1991 & Supp. 1996).  The right to control, though not dispositive, is emphasized in the analysis.  *Carver v. Sparta Elec. System*, 690 S.W.2d 218, 220 (Tenn. 1985).

However, the right to control must exist in relation to the conduct and manner of the work performed, and not just the end product:

> The primary test for determining claimant's status as employee or independent contractor is the "right to control."  Generally, when the general contractor has a right to supervise or inspect the work to see that the end result conforms to plans and specifications but has no right of control over details of performance and methods used to achieve this result, the general or principal contractor and the worker do not have an employer-employee relationship.  That worker is an independent contractor.

*Lindsey v. Smith & Johnson, Inc.*, 601 S.W.2d 923,925 (Tenn. 1980) (citations omitted). Labels placed upon workers in contracts are not binding:

> The provision in the contract that purports to establish that Wright and Lopez is an independent contractor is likewise not dispositive of the case.  When the facts are essentially undisputed, as in this case, the question of whether one is an employee or an independent contractor is one of law for the courts.  The parties cannot by contract take this responsibility from the court.

*Stratton*, 695 S.W.2d at 953 (citations omitted).

In this case, the facts indicate that WFA had the right to control the conduct of Wolney's work, under Tennessee Code Annotated § 50-6-102(a)(9).  Wolney notes that the Agreement gave him the right to turn down the assignment to WFA.  However, once Wolney accepted the assignment, he was bound to complete it.  Wolney's work instructions were prepared by WFA, though they were initially conveyed to him by a WFG employee.  Although the contract ostensibly required written approval of changes in the work assignment, the instructions received by WFG were subject to change in WFA's discretion.  Normally, Fowler or another WFA employee would tell the WFG guards which run they were on and give them the details of their assignment when they reported to work.  In this case, a WFA employee prepared Wolney's work schedule and assigned him

4

to a specific WFA vehicle.

Wolney testified that Jones, a messenger guard and a WFA employee, told him where to sit in the armored vehicle and how and when to push the buttons. Wolney also testified that Jones told him to wait inside the vehicle while Jones and Emmons performed their duties. Jones, on the other hand, testified that he did not give Wolney any instructions on the day of the accident. Nevertheless, it is undisputed that it was the messenger guard's responsibility to instruct Wolney as to his duties. Any dispute of fact as to whether Jones actually gave Wolney instructions on the day of the accident is immaterial because the test is whether the right to control *existed*, not whether or not it was exercised. *See Carver*, 690 S.W.2d at 220. Thus, the facts indicate that WFA had the right to control the conduct of Wolney's work.

Other factors listed in Tennessee Code Annotated § 56-6-108 militate in favor of a finding that Wolney was an employee of WFA. Although WFA did not furnish tools to Wolney, it furnished the armored truck in which he was riding at the time of the accident. In addition, Wolney was not free to hire others to help him with his duties. Moreover, WFA had complete control over Wolney's work schedule at WFA, including the time that he was to report to work, the time that he would leave work, and the number of hours that he worked.

WFA also had the right to terminate Wolney at any time. The right of termination "is incompatible with the full control of the work which is usually exercised by an independent contractor." *Frost v. Blue Ridge Timber Corp.,* 158 Tenn. 18, 22, 11 S.W.2d 860, 862 (1928); *see also Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656 (Tenn. 1982); *Curtis,* 466 S.W.2d at 222. The right of termination is not controlling when there are no other factors to indicate an employer-employee relationship. *Wright v. Knox Vinyl & Alum. Co.*, 779 S.W.2d 371, 374 (Tenn. 1989). However, in this case, numerous factors indicate that Wolney was a statutory employee of WFA.

Wolney argues that the Agreement between WFG and WFA designates Wolney as an employee of WFG, not WFA. However, this language is not dispositive. *Stratton*, 695 S.W.2d at 953. Wolney notes further that he was wearing his WFG uniform on the day of the accident, and that WFG paid his salary and made tax and social security deductions. These factors are considered but are not controlling. *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 587 (Tenn. 1991); *see also Wooten Transports, Inc. v. Hunter*, 535 S.W.2d 858, 860 (Tenn. 1976) (finding that a

5

company's failure to withhold deductions for social security, income taxes, and workers' compensation was not controlling).

Therefore, analyzing the facts in light of the factors set forth in Tennessee Annotated Code § 50-6-102(a)(9), WFA had the right to control the conduct of Wolney's work and the right to terminate him. Wolney was not free to hire helpers. WFA furnished the equipment to Wolney, the vehicle, and scheduled his working hours. These factors clearly weigh in favor of finding that Wolney was a statutory employee of WFA. Weighed against these are the fact that Wolney was paid by WFG, that Wolney could have turned down the assignment, and that the agreement designates workers such as Wolney as employees of WFG.

As noted above, the Workers' Compensation Act is remedial in nature and is to be construed in favor of a finding that a worker is a statutory employee. *Curtis*, 466 S.W.2d at 222; *Barker*, 199 Tenn. at 413, 287 S.W.2d at 46; *see also* Tenn. Code Ann. § 50-6-116. In light of this construction, the undisputed facts in this case indicate that Wolney qualifies as a statutory employee of WFA and that the trial court did not err in granting summary judgment in favor of WFA.

Accordingly, the decision of the trial court is affirmed. Costs on appeal are taxed to Appellant, for which execution may issue if necessary.


_____
                                          **HOLLY KIRBY LILLARD, J.**
_____

**CONCUR:**


_____
**ALAN E. HIGHERS, J.**


_____
**DAVID R. FARMER, J.**

6