IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

# LINNIE CLEEK  v.  WAL-MART STORES, INC.

**Appeal from the Chancery Court for Madison County**
**No. 53822     Hon. Joe C. Morris, Chancellor**

---

**No. W1999-02419-SC-R3-CV  —  Decided June 2, 2000**
**FOR PUBLICATION**

---

The primary issue in this workers' compensation direct appeal is whether the evidence preponderates against the trial court's findings that the appellant is 20% permanently and partially disabled.  We are also asked to decide whether the appellant is entitled to an additional period of temporary total disability benefits after she made a nominal return to work but later resigned because of pain associated with her original injury.  This case was argued before the Special Workers' Compensation Appeals Panel on August 13, 1999, but before an opinion was issued by the Special Panel, the case was transferred to the Supreme Court for an en banc hearing.  After a thorough review of the record in this case, along with consideration of the relevant legal authorities, we hold that the evidence does preponderate against the findings of the trial court and that the evidence establishes that the appellant is permanently and totally disabled.  We further hold that the appellant is entitled to an additional period of temporary total disability benefits for the period between her resignation and maximum medical improvement. We modify the judgment of the Madison County Chancery Court, and we remand this case for enforcement of our judgment.

**Tenn. R. App. P. 3 Appeal as of Right;  Judgment of the Madison County Chancery Court is Modified, and Case is Remanded for Enforcement of Judgment as Modified by this Court.**

BARKER, J., delivered the opinion of the court, in which ANDERSON, C.J., and BIRCH, J., and HOLDER, J., joined.  DROWOTA, J., not participating.

Donna Brown Wilkerson, Jackson, Tennessee for the appellant, Ms. Linnie Cleek.

Jeffrey P. Boyd, Jackson, Tennessee; B. Chadwick Rickman, Jackson, Tennessee, for the appellee, Wal-Mart Stores, Inc.

## OPINION

In September of 1989, Ms. Linnie Cleek, the appellant in this case, went to work for Wal-Mart Stores in Bolivar, Tennessee as a door greeter.  Nine years earlier, her husband, who provided the sole source of income for the family, was forced to retire from Colonial  Bakery because of

health reasons. Although the family survived for several years on disability benefits from Colonial Bakery and social security payments, the family needed additional income to make ends meet. It was at this point in 1989 that the appellant, who had no formal education beyond the tenth grade, entered the workforce for the first time in her life at the age of 64.

After working for Wal-Mart as a door greeter for eight years, the appellant suffered an injury in the course and scope of her employment on July 5, 1997. As she was assisting a customer to verify an article of purchase, she tripped over a couple of pallets left on the floor by another Wal-Mart employee, and she fell to the floor. As a result of her fall, she suffered a four-part fracture to her left shoulder as well as significant bruising throughout that area. Given her advanced age—the appellant was now 72—and the nature of the fractures, Dr. Michael Cobb, the appellant's treating physician, recommended that the appellant forego surgery.

On August 27, 1997, Dr. Cobb released the appellant to return to work with several restrictions. Although she attempted to perform her job as she had done before the accident, she had significant difficulties doing so. She could no longer do many of the duties that she was previously capable of doing, such as washing the windows and emptying the trash cans. In addition, she had trouble putting stickers on returned merchandise and frequently dropped these items when handed to her. The appellant testified that because of these difficulties, many of the customers became agitated when she had trouble assisting them.

Most importantly, though, the appellant testified that she experienced considerable pain throughout her entire left arm, even though only the shoulder was actually broken. In fact, the pain from her shoulder and arm was so intense at times that she became nauseous and could not perform the duties required by her job. When she saw Dr. Cobb again on September 25, 1997, the appellant told him that she was still experiencing great pain and that she was having trouble performing her job. Dr. Cobb suggested that she retire given her injury, age, and problems she was having at work. The next day, the appellant gave Wal-Mart notice of her intention to resign, and she formally resigned two-weeks later. On November 5, 1997, Dr. Cobb completely released the appellant after determining that she had reached maximum medical improvement.

At trial, the court admitted into evidence the deposition testimony of two doctors who examined the appellant and who assigned different impairment ratings. Dr. Cobb assigned the appellant an 8% impairment to the upper extremity, or 5% to the body as a whole, based upon the impaired range of motion in her arm. Dr. Joseph C. Boals, the appellant's evaluating physician, assigned the appellant a 35% impairment to the upper extremity. Although Dr. Boals admitted that he may have misapplied the AMA Guidelines in making this assessment, he stated that irrespective of the actual impairment rating, it was clear that the appellant was "almost one-armed" and that "she is pretty much crippled."

On February 23, 1999, the trial court entered its final order in which it concluded, among other things, that the appellant "has no future in the job market other than what the defendant is willing to give her." Based on its findings of fact, the trial court awarded the plaintiff "permanent

partial disability benefits in the amount of 20% to the body as a whole," and held that the appellant "has received all of the temporary total disability benefits to which she is entitled."

The appellant sought review of the judgment arguing that the evidence preponderated against the trial court's finding that she was 20% permanently and partially disabled and that she was entitled to additional temporary total disability benefits. Oral argument was heard before the Special Workers' Compensation Appeals Panel on August 13, 1999, but the Panel transferred the case to the full Supreme Court on January 24, 2000 without rendering an opinion. Before this Court, the appellant argues that the evidence establishes that the appellant is permanently and totally disabled. We agree and also conclude that the appellant is entitled to additional temporary total disability benefits. Accordingly, for the reasons contained herein, we modify the judgment of the chancery court.

## STANDARD OF APPELLATE REVIEW

The extent of vocational disability is a question of fact to be determined from all of the evidence, including lay and expert testimony. E.g., Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 628 (Tenn. 1999); Worthington v. Modine Mfg. Co., 798 S.W.2d 232, 234 (Tenn. 1990). As such, our review of the trial court's finding in this case is de novo upon the record, "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(e)(2) (1999); Stone v. City of McMinnville, 896 S.W.2d 548, 550 (Tenn. 1995). Under this standard of review, we are required "to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases." Compare Humphrey v. David Witherspoon, Inc., 734 S.W.2d 315, 315 (Tenn. 1987), with Anderson v. Dean Truck Line, Inc., 682 S.W.2d 900, 901-02 (Tenn. 1984) (stating that under the former material evidence standard of review, this Court was required to accept the findings of fact of trial courts if those findings are supported by any material evidence).

Accordingly, we are no longer strictly bound by the findings of the trial court in workers' compensation cases, and we are obliged to review the record on our own to determine where the preponderance of the evidence lies. Ivey v. Trans Global Gas & Oil, 3 S.W.3d 441, 446 (Tenn. 1999); Corcoran v. Foster Auto GMC, Inc., 746 S.W.2d 452, 456 (Tenn. 1988). Although deference still must be given to the trial judge when issues of credibility and weight of oral testimony are involved, Seals v. England/Corsair Upholstery Mfg. Co., 984 S.W.2d 912, 915 (Tenn. 1999); Jones v. Hartford Accident & Indem. Co., 811 S.W.2d 516 (Tenn. 1991), this Court is able to make its own independent assessment of the medical proof when the medical testimony is presented by deposition. Landers v. Fireman's Fund Ins. Co., 775 S.W.2d 355, 356 (Tenn. 1989); Henson v. City of Lawrenceburg, 851 S.W.2d 809, 812 (Tenn. 1993).

## EXTENT OF VOCATIONAL DISABILITY

The appellant first argues that the preponderance of the evidence established that she is permanently and totally disabled. Any award of permanent total disability must be in compliance with the statutory definition of total disability contained in Tennessee Code Annotated section

50-6-207(4).  See Prost v. City of Clarksville, Police Dept., 688 S.W.2d 425, 427 (Tenn. 1985).  The statute defines "permanent total disability" as follows:

> When an injury not specifically provided for in this chapter as amended, totally incapacitates the employee from working at an occupation which brings him an income, such employee shall be considered "totally disabled," and for such disability compensation shall be paid as provided in subdivision (4)(A) . . . .

Tenn. Code Ann. § 50-6-207(4)(B) (1999).

As the statute and our case law make clear, the legal definition of permanent total disability does not carry the same meaning as permanent and total *medical* disability.  Rather, any inquiry as to whether an employee is permanently and totally disabled from a legal perspective must "focus on the employee's ability to return to gainful employment."  Davis v. Reagan, 951 S.W.2d 766, 767 (Tenn. 1997).  Accordingly, "[t]he assessment of permanent total disability is based upon numerous factors, including the employee's skills and training, education, age, local job opportunities, and his [or her] capacity to work at the kinds of employment available in his [or her] disabled condition."  Roberson v. Loretto Casket Co., 722 S.W.2d 380, 384 (Tenn. 1986); see also Perkins v. Enterprise Truck Lines, Inc., 896 S.W.2d 123, 127 (Tenn. 1995).  Although a rating of anatomical disability by a medical expert is also one of the relevant factors, "the vocational disability is not restricted to the precise estimate of anatomical disability made by a medical witness."  Henson v. City of Lawrenceburg, 851 S.W.2d 809, 812 (Tenn. 1993) (citing Corcoran v. Foster Auto GMC, Inc., 746 S.W.2d 452, 458 (Tenn. 1988)).  In addition, the employee's "own assessment of her physical condition and resulting disability is competent testimony that should be considered . . . ."  McIlvain v. Russell Stover Candies, Inc., 996 S.W.2d 179, 183 (Tenn. 1999).

In this case, the appellant, who was 72 years old at the time of the injury, had no particular trade skill or training in a given occupation or profession.  Her formal education ended after the tenth grade, and she took no vocational or special classes after that time.  She did not receive a GED, and she lacked a certification in any area.  Because she was a homemaker until her husband retired due to his health in 1980, she had no previous work history or experience prior to her employment with Wal-Mart in 1989.  Presumably for these reasons, the chancery court found that the appellant "has no future in the job market other than what the defendant is willing to give her."

The appellee argues that the appellant cannot be permanently and totally disabled because she demonstrated that she was able to work in some capacity in her former position and earn the same wages as she did before her injury.  While it is true that the appellant returned to Wal-Mart in some capacity for a short time after her medical release, the evidence in the record establishes that she was unable to continue in that position because of the pain in her arm and shoulder.  Not only did the appellant testify as to this fact herself at trial, but this reason is further supported by the advice of both examining physicians that the appellant should resign due to her injuries and age.  In fact, the appellant testified that but for this injury to her shoulder, she would have remained employed with Wal-Mart for as long as she could because the family needed the income.

Although we give strong deference to the trial court on issues of witness credibility, we do not find anywhere in the record that the trial court found the appellant's testimony not to be credible. In fact, it appears that she was a credible witness given the fact that her testimony with regard to her injury or pain was not challenged by Wal-Mart, and given the fact that even Wal-Mart's witness at trial believed the appellant to be "a real honest lady." Assuming the appellant to be a credible witness with regard to the extent of her pain and the reasons for leaving her employment, we view her testimony particularly helpful in determining the extent of her vocational disability.

While we agree that the fact of employment after injury is a factor to be considered in determining whether an employee is permanently and totally disabled, this fact is to be weighed in light of all other considerations. Based upon our own review of the record, it is clear that the appellant was not able to continue in her employment with the appellee because of her injuries, and consequently, she was not employable in the open job market or in any capacity with the appellee. We hold, therefore, that the preponderance of the evidence weighs against the trial court's finding of permanent partial disability and establishes that the appellant is permanently and totally disabled.

Although somewhat similar to the facts of this case, we are also of the opinion that this case is not controlled by our recent decision in Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625 (Tenn. 1999). In Nelson, the plaintiff, who was a 67 year-old sales associate for Wal-Mart, fell and broke her hip in the course and scope of her employment. Although the plaintiff claimed that she was permanently and totally disabled due to her age and lack of transferrable job skills, we held that the preponderance of the evidence only established permanent partial disability because she was not "totally incapacitated" in "working at an occupation which brings . . . an income." Id. at 629. The plaintiff's occupational expert testified that the plaintiff could perform part-time, sedentary work, which was consistent with her medical restrictions, and neither doctor testified that the plaintiff was permanently and totally disabled. Moreover, because the plaintiff never attempted to perform the door-greeter position that Wal-Mart offered later her, the evidence did not preponderate against the findings of the trial court.

Unlike Nelson, however, the evidence in this case does preponderate in favor of permanent total disability. Although no occupational expert testified in this case that the appellant was permanently and totally disabled, the trial court correctly confirmed this fact by finding that the appellant "has no future in the job market." Further in contrast to Nelson, the appellant in this case attempted to return to work at Wal-Mart in her position as a door greeter. Although Wal-Mart, to its credit, was certainly willing to make reasonable accommodations to assist the plaintiff, the appellant discovered upon her brief return to work that she could no longer perform even this job because of the intense pain from her injuries. It was at this point that the appellant's treating physician recommended to her that she resign due to her advanced age and injuries, a recommendation that was agreed to by the appellant's evaluating physician.

Accordingly, we hold that the preponderance of the evidence establishes that the appellant is permanently and totally disabled, and that the appellant is entitled to receive 260 weeks of benefits pursuant to Tennessee Code Annotated section 50-6-207(4)(A)(1). Upon remand, the trial court should determine whether, and to what extent, the appellee is entitled to any offset from any Social

Security old age insurance benefits received by the appellant. See Tenn. Code Ann. § 50-6-207(4)(A)(i); McCoy v. T.T.C. Illinois Inc., 14 S.W.3d 734 (Tenn. 2000).

## ADDITIONAL TEMPORARY TOTAL DISABILITY BENEFITS

The appellant next argues that she is entitled to additional temporary total disability benefits covering the period of time between her resignation on October 10, 1997 and her release by Dr. Cobb on November 5, 1997 after reaching maximum medical improvement. The appellee, on the other hand, contends that temporary total disability benefits were properly terminated when the appellant was initially released to returned to work on August 29, 1997.

At least since our decision in Redmond v. McMinn County, 209 Tenn. 463, 354 S.W.2d 435 (1962), we have recognized that the Workers' Compensation Act provides for four types of disability benefits, each of which serves a specific compensation purpose. Temporary total disability "refers to the injured employee's condition while disabled to work by [the] injury and until [the employee] recovers as far as the nature of [the] injury permits . . . ." Id. at 468, 354 S.W.2d at 437. Tennessee Code Annotated section 50-6-207(3)(A)(i) specifically provides that the injured employee shall receive compensation "for the period of time during which [the employee] suffers temporary total disability on account of the injury," and thus the purpose served by such benefits is to allow for "the healing period during which the employee is totally prevented from working." Gluck Bros., Inc. v. Coffey, 222 Tenn. 6, 13-14, 431 S.W.2d 756, 759 (1968).

Thus, in order to establish "a prima facie case of entitlement to temporary total disability, an employee must prove that he [or she] was (1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and his inability to work; and (3) the duration of that period of disability." Simpson v. Satterfield, 564 S.W.2d 953, 955 (Tenn. 1978). Because "there is a time when temporary total disability ends, and a determination can be made with reasonable certainty as to whether the condition of Petitioner would respond to further treatment or whether his [or her] disability is permanent," Insurance Co. of North America v. Lane, 215 Tenn. 376, 392, 386 S.W.2d 513, 520 (1965), temporary total disability benefits "are terminated either by the ability to return to work or attainment of maximum recovery." See, e.g., Simpson, 564 S.W.2d at 955.

Although we agree that temporary total disability benefits terminated once the appellant returned to work in August of 1997, the fact that benefits were terminated by a nominal return to work does not necessarily mean that temporary total disability benefits can never be revived under any set of circumstances. While we can find no reported Tennessee case which holds that an employee may be entitled to a second period of temporary total disability benefits, there are two such cases issuing from the Special Appeals Panel. In Williams v. Witco Corporation, No. 02S01-9302-

CV-00013 (Tenn. Sp. W.C. App. P. filed at Jackson Dec. 30, 1993),[1] the Panel awarded an employee a second period of temporary total disability benefits after the employee had returned to work but had to quit because of the pain from the original back injury. The panel stated that while the case was unique, a second period of temporary total disability benefits was warranted because the employee had shown (1) a total disability to work caused by a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the period of time of the second disability. Id. (citing Simpson v. Satterfield, 564 S.W.2d 953 (Tenn. 1978)). In response to the defendant's argument that pain alone could not trigger a second period of temporary total disability benefits, the Panel stated that the employee's back pain could constitute a disabling injury, so long as it was resulting from the work-related injury. Id. (citing Boling v. Raytheon, 448 S.W.2d 405 (Tenn. 1969)).

Similarly, in Wise v. Murfreesboro Health Care Center, No. 01S01-9404-CH-00034 (Tenn. Sp. W.C. App. P. filed at Nashville July 25, 1994),[2] an employee injured her back in the course and scope of her employment, and following surgery, her treating physician released her to return to work after finding that she had reached maximum medical improvement. Six months later, however, the employee experienced severe pain in her leg resulting from residual or recurrent disc herniation from the first injury. In addressing whether the employee was entitled to a second period of temporary total disability benefits, the Panel stated that although her temporary benefits were terminated after the employee initially returned to work, she was nevertheless entitled to a second period of temporary benefits when she again became totally unable to work because of the original injury. As the Panel stated:

> Temporary total disability is generally terminated when the injured employee reaches maximum recovery. The initial period of temporary total disability in this case was so calculated. However, the underlying premise that Ms. Wise had reached maximum medical improvement proved to be premature and incorrect, and another such period followed the second injury. The trial judge correctly awarded additional compensation for that frame.

Id.[3]

---

[1] 1993 WL 835601.

[2] 1994 WL 902477.

[3] In Roberson v. Loretto Casket Company, 772 S.W.2d 380 (Tenn. 1986), this Court did not allow a second period of temporary total disability benefits because the employee, who suffered an eye injury, returned to work after reaching maximum medical improvement. Although the employee later resigned from his job because dust irritated his eye, we did not allow additional temporary total disability benefits primarily because the employee had already reached maximum medical improvement when he returned to work. Id. at 384 ("Eligibility for [temporary total disability] benefits is not revived because of a subsequent termination where the proof demonstrates

Other states also permit a revival of temporary total disability benefits under circumstances such as those presented in this case. Many states recognize that temporary total disability "may occur at different times during the recuperative period of healing until maximum medical improvement is reached or can be ascertained depending on the circumstances of each case." Defense Ordinance Corp. v. England, 295 So. 2d 419, 424 (Ala. Civ. App. 1974); see also Larson, Workmen's Compensation Law § 57.10 and cases cited therein. The Ohio General Assembly has even recognized that "an employee, because of an injury or series of injuries suffered in the course of employment, may find herself, more than once in her lifetime, temporarily unable to work." State ex rel. Bing v. Industrial Comm'n, 575 N.E.2d 177, 179 (Ohio 1991) (citing Ohio Rev. Code Ann. § 4123.56(A), which states that "[t]he termination of temporary total disability, whether by order or otherwise, does not preclude the commencement of temporary total disability at another point in time if the employee again becomes temporarily totally disabled").

In this case, although Dr. Cobb released the appellant to work on August 29, 1997, he also later advised the appellant to resign from that job because of the pain associated with her job-related injuries and her age. Even at the time of her resignation, the appellant still had not reached maximum medical improvement, which was on November 5, 1997. Consequently, even after the appellant returned to work, an identifiable period of time existed before maximum medical improvement when the appellant "[was] totally prevented from working" because of a work-related injury. To adopt the appellee's construction of the statute would defeat the purpose of temporary total disability benefits, which works to ensure that the employee receives some compensation during "the healing period during which the employee is totally prevented from working." See, e.g., Fagg v. Hutch Mfg. Co., 755 S.W.2d 446, 452 (Tenn. 1988).

"From the very beginning, this Court has been ever mindful of the remedial nature of this legislation and the law had been uniformly construed so as to secure for the beneficiaries of the law every protection that a liberal construction would authorize." Fowler v. Consolidated Aluminum Corp., 665 S.W.2d 713, 715 (Tenn. 1984) (citing Curtis v. Hamilton Block Co., 225 Tenn. 275, 466 S.W.2d 220 (1971); Baxter v. Jordan, 158 Tenn. 471, 14 S.W.2d 717 (1929)); see also Tenn. Code Ann. § 50-6-116 (1999). We hold, therefore, that temporary total disability benefits, which are terminated because of a nominal return to work, may be revived when (1) the employee is no longer

without contradiction that the employee not only had reached maximum recovery but had returned to work as well."); see also Prince v. Sentry Ins. Co., 908 S.W.2d 937, 940 (Tenn. 1995). To be certain, though, Roberson did not foreclose the possibility that temporary total disability benefits could be revived under the proper circumstances.

In the present case, the appellant was yet to reach maximum medical improvement at the time of her attempted return to work, and she resigned because of the pain associated with and resulting from her original injury. The appellant is also aided by the fact that her treating physician, who originally released her to work, later counseled her to resign based on her advanced age and injuries. Accordingly, we conclude that the decision in this case is more supported by the rationale of Williams and Wise.

-8-

capable of performing either that job or any other job because of the work-related injury; and (2) the employee, at the time of resignation, has yet to reach maximum medical improvement from the original accidental injury. Accordingly, we hold that the appellant's temporary total disability benefits should have been revived for the period of time between her final resignation and when she reached maximum medical improvement. The appellant is entitled, therefore, to two-thirds of the average weekly wage for the period of time between October 10, 1997 and November 5, 1997, or $560.82.[4]

## CONCLUSION

Based on our own *de novo* review of the record, we hold that the preponderance of the evidence does not support the chancery court's finding that the appellant is 20% permanently and partially disabled. Rather, we hold that the preponderance of the evidence establishes that the appellant is permanently and totally disabled. In addition, we hold that the appellant is entitled to a second period of temporary total disability benefits from her final resignation until she reached maximum medical improvement. This case is remanded to the Madison County Chancery Court for enforcement of the judgment as modified by this Court. Upon remand, the trial court should determine whether, and to what extent, the appellee is entitled to any offset from any Social Security old age insurance benefits received by the appellant.

Costs of this appeal are assessed to the appellee, Wal-Mart Stores, Inc., for which execution shall issue if necessary.

---

[4] This figure is calculated by adding three weeks at the weekly compensation rate of $150.99 ($452.97) with five days at one-seventh of the weekly compensation rate ($107.85). See Tenn. Code Ann. § 50-6-207(1).