FILED

February 8, 2016

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 2:00 PM

**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| James Peters | ) | Docket No. 2015-02-0209 |
| | ) | |
| v. | ) | State File No. 49650-2015 |
| | ) | |
| Jonathan Mitchell d/b/a | ) | |
| A Clean Connection, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Brian K. Addington, Judge | ) | |

_____

**Affirmed as Modified and Remanded - Filed February 8, 2016**

_____

In this interlocutory appeal, the injured worker alleges suffering an injury to his foot when he slipped off a ladder while working for a business that provides cleaning and maintenance services to other businesses. He immediately reported the fall but did not seek medical treatment until two months later. Although a panel of physicians was provided, the employer declined to provide medical or disability benefits on the basis that the injured worker was an independent contractor. The trial court determined that the worker was an employee and ordered medical benefits. The employer has appealed. Having carefully reviewed the record, we affirm the trial court's decision as modified.

Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board, in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Michael Haynie, Nashville, Tennessee, for the employer-appellant, A Clean Connection, LLC

James Peters, Kingsport, Tennessee, employee-appellee, pro se

1

**Factual and Procedural Background**

James Peters, a resident of Sullivan County, Tennessee, alleges he sustained an injury to his right foot on March 10, 2015, when he slipped and fell from a ladder. At the time of his injury, Mr. Peters was supervising a cleaning crew at Aurora Casket Company ("Aurora"), which had contracted with the employer, A Clean Connection, LLC ("ACC"), to provide monthly cleaning services. As part of his duties at Aurora, Mr. Peters was required to climb a scissor lift and use air hoses to blow sawdust off rafters. On the date of the injury, he was working from the top rung of a ladder when he slipped and fell. That same day, he informed Jonathan Mitchell, ACC's owner, that he had fallen and hurt his foot but was able to complete his duties.

In April 2015, Mr. Mitchell contacted Mr. Peters about returning to Aurora for the monthly cleaning service. Mr. Peters supervised the April service and, at that time, informed Mr. Mitchell he was having ongoing problems from his fall the previous month. Mr. Mitchell suggested that he have his foot evaluated, but Mr. Peters did not seek treatment at that time. Aurora cancelled the May 2015 cleaning service. Then, in June 2015, Mr. Mitchell sent Mr. Peters a text message informing him that he no longer needed his services.

Mr. Peters first sought treatment for his foot injury at the Holston Valley Medical Center on May 12, 2015. X-rays revealed no broken bones, and Mr. Peters was diagnosed with a foot sprain. On June 29, 2015, Mr. Peters filed a petition seeking medical and temporary disability benefits. Thereafter, ACC provided a panel of physicians, and Mr. Peters selected Dr. Kent Lord from the panel. He saw Dr. Lord on August 5, 2015 and again sometime in September 2015. Although the record contains a vague suggestion that Dr. Lord may have recommended additional treatment in the form of physical therapy, Mr. Peters testified that he has not sought the additional treatment because he wanted to determine if he is entitled to workers' compensation benefits before incurring additional medical expenses.

Both Mr. Peters and Mr. Mitchell testified at the expedited hearing. The testimony of Mr. Peters reflects his belief that he was an employee of ACC. He stated that he had, in years prior to his injury, received a W-2, although he acknowledged receiving a 1099 for his work in 2014. Also, in addition to the monthly cleaning work at Aurora, Mr. Peters testified that he performed other jobs for Mr. Mitchell, such as pressure washing houses and buffing floors, and that it was his belief that these jobs were performed under the auspices of ACC. The wage statement submitted reflects only the wages ACC paid Mr. Peters for the monthly cleaning at Aurora. Mr. Peters agreed that the wage statement

2

accurately reflects what he was paid for that job, though he testified that some portion of his paycheck was withheld for workers' compensation insurance.[1]

Mr. Peters also testified that Aurora provided most of the equipment used to clean its facility. While Mr. Mitchell seldom came to Aurora to review or supervise the work, Mr. Peters stated that he was told by Mr. Mitchell when and where to perform his job duties and what tasks needed to be completed. He also acknowledged that he was working thirty to forty hours a week for a third party performing construction work during the period in which he suffered his foot injury.

For his part, Mr. Mitchell testified that ACC, which he and his wife co-own, does not have any employees. He explained that there are several criteria he and his wife follow regarding their business, such as "[t]ransportation . . . 1099, the way we tax—he's taxed—that's one. The equipment—the client provides the equipment. Those are some of the criteria." Mr. Mitchell further testified that Mr. Peters was free to hire his own workers and could refuse to accept an assignment. Mr. Mitchell stated that the equipment necessary to perform the job at Aurora was provided by Aurora, although he did provide masks and goggles to the cleaning crew. According to Mr. Mitchell, Mr. Peters was a "crew leader" on the Aurora job and worked approximately five hours a month there, but he was considered a "general laborer" on other jobs for ACC.

The trial court found that Mr. Peters was an employee of ACC and not an independent contractor. The trial court also ordered ACC to authorize a return appointment for Mr. Peters to be seen by Dr. Lord for a causation opinion. ACC appealed.

## Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

---

[1] Although the evidence is vague regarding deductions from Mr. Peters' paychecks, we note that employers are prohibited from deducting any portion of workers' compensation insurance premiums from an employee's wages or salary. *See* Tenn. Code Ann. § 50-6-405(d)(1) (2015). If workers' compensation premiums were deducted from Mr. Peters' paychecks, an election of workers' compensation coverage may have occurred even if he were deemed to be an independent contractor or subcontractor. *See* Tenn. Code Ann. § 50-6-113(e) (2015); *Presley v. Bennett*, 860 S.W.2d 857 (Tenn. 1993). However, because this issue has not been raised on appeal, we need not address it.

(A)    Violate constitutional or statutory provisions;
(B)    Exceed the statutory authority of the workers' compensation judge;
(C)    Do not comply with lawful procedure;
(D)    Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;
(E)    Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015).  Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

### *Employee v. Independent Contractor*

ACC asserts that the trial court erroneously found that Mr. Peters was an employee rather than an independent contractor.  ACC points out that Mr. Mitchell regarded Mr. Peters as an independent contractor and that he received a 1099 rather than a W-2 for his work in 2014.  ACC also notes that Mr. Peters was working thirty to forty hours a week for a third party when he injured his foot on March 10, 2015, and that Aurora, not ACC, provided most of the equipment used to clean Aurora's facility.  In addition, ACC contends that Mr. Peters was free to hire other workers and to work more than the hours allotted to clean Aurora's building.

To recover workers' compensation benefits, a claimant must be an employee and not an independent contractor.[2]  *Bargery v. Obion Grain Co*., 785 S.W.2d 118, 121 (Tenn. 1990).  The courts have defined "independent contractor" as follows:

One who contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work, and who has the right to employ and direct the action of the workmen independent of his employer, and free from any superior authority in the employer to say how the specified work shall be done, or what the laborers shall do as the work progresses; one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains that result.

---

[2] As noted above, an exception to this general rule is reflected in Tennessee Code Annotated section 50-6-113(e), which provides a mechanism for subcontractors to elect workers' compensation coverage under a general contractor's policy.

*Barker v. Curtis*, 287 S.W.2d 43, 45 (Tenn. 1956).  The legislature has also provided guidance in this regard.  The pertinent statute, Tennessee Code Annotated section 50-6-102(12)(D)(i), provides:

> In a work relationship, in order to determine whether an individual is an "employee," or whether an individual is a "subcontractor" or an "independent contractor," the following factors shall be considered:
>
> (a) The right to control the conduct of the work;
> (b) The right of termination;
> (c) The method of payment;
> (d) The freedom to select and hire helpers;
> (e) The furnishing of tools and equipment;
> (f)  Self-scheduling of working hours; and
> (g) The freedom to offer services to other entities[.]

Tenn. Code Ann. § 50-6-102(12)(D)(i) (2015).

The factors listed in section 50-6-102(D)(i) are not absolutes that preclude an examination of the parties' working relationship as a whole.  *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656 (Tenn. 1982).  Moreover, no single aspect of the parties' relationship is determinative, and in deciding whether a worker is an employee or independent contractor, "the trier of fact must examine all relevant factors and circumstances" of the relationship.  *Boruff v. CNA Ins. Co.*, 795 S.W.2d 125, 127 (Tenn. 1990).  Once the existence of an employment relationship has been established, it is the employer's burden to prove that the injured worker was not an employee but an independent contractor.  *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 586 (Tenn. 1991).

Of the factors identified in section 50-6-102(12)(D)(i), the right to control the conduct of the work has been characterized as the most significant in determining whether an injured worker is an employee or independent contractor.  *Galloway*, 822 S.W.2d at 586.  In this case, ACC instructed Mr. Peters where and when to report to work.  In addition, it provided him with a list of tasks Aurora had contracted with ACC to perform.  At the end of each service, either Mr. Mitchell or Mr. Peters, in his capacity as jobsite supervisor, would review the list and ensure that each task had been completed.  Moreover, although section 50-6-102(12)(D)(i) identifies the scheduling of work hours as an independent factor, it can be considered in the context of whether an employer or contractor exercises control over the work.  Here, ACC instructed Mr. Peters when to appear to perform the cleaning service and how long the service should take.  Although the testimony at the expedited hearing reveals that Mr. Peters and the crew could take longer to complete the tasks if necessary, ACC provided a timeframe within which Mr.

Peters and his co-workers were expected to complete the list of tasks assigned to them. These facts support the existence of an employer-employee relationship.

The right of termination is likewise a significant factor in determining the nature of the parties' work relationship. As stated by the Tennessee Supreme Court, "[t]he power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show" an employment relationship. *Curtis v. Hamilton Block Co.*, 466 S.W.2d 220, 222 (Tenn. 1971). "Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself." *Id.* Here, ACC demonstrated its right to terminate Mr. Peters at will when Mr. Mitchell informed him via text message that his services were no longer required. Mr. Peters had no control over the termination and no right to require ACC to provide advance notice or comply with contractual terms typically associated with an employer-independent contractor relationship. The ability to terminate a business affiliation at will is consistent with the existence of an employer-employee relationship. *See Masiers*, 639 S.W.2d at 656.

Regarding the method of payment, the parties agree that Mr. Peters was provided a 1099 for services performed in 2014. His uncontradicted testimony was that, in prior years, he had received a W-2. He also testified that ACC withheld a certain amount from his paycheck which he understood to be for workers' compensation coverage. That testimony was not fully developed, and Mr. Mitchell was not asked to address that allegation, so it is unclear whether this was, indeed, some sort of withholding or if Mr. Peters was mistaken in his belief that wages were being withheld specifically for workers' compensation insurance. Regardless, the proof does not address whether Mr. Peters was paid on an hourly basis or on the basis of some other contractual measure, such as the completion of the job. *See Cromwell Gen. Contractor, Inc. v. Lytle*, 439 S.W.2d 598, 601 (Tenn. 1969). Thus, there is insufficient information concerning the method of payment or the agreement for compensation between the parties to find that this factor weighs in favor of either side.

Mr. Mitchell testified that Mr. Peters was able to select and hire his own helpers. However, there is no proof in the record that Mr. Peters was aware of this option, had ever attempted to hire someone, or had ever requested that he be allowed to hire someone in the fifteen years he worked for Mr. Mitchell. In fact, Mr. Mitchell testified that the contract with Aurora required a five-person crew and that it had been necessary to replace Mr. Peters when he believed Mr. Peters was unable to work. Such testimony is contrary to a finding that the individuals working on this job were selected or employed by Mr. Peters, that Mr. Peters could have selected a worker to take his place, or that he could instruct the other workers to perform the job in his absence. Rather, it is clear that Mr. Mitchell made the decision whether to hire or fire a worker. When Mr. Peters inquired

6

into the June 2015 monthly service at Aurora, Mr. Mitchell told him his services were no longer needed as it "was a mandatory crew of five, so I had to plug somebody in." These circumstances likewise suggest an employee-employer relationship.

As to the furnishing of tools and equipment, there is no dispute that Aurora furnished most of the equipment used to clean its facility. The scissor lift and air hoses were the property of Aurora and were provided for use by the crew sent by ACC. While ACC did not provide this equipment, presumably the agreement between ACC and Aurora was that Mr. Peters and his co-workers could utilize the equipment as required to accomplish the assigned tasks. Mr. Mitchell implied as much in his testimony. ACC did provide necessary personal safety equipment, such as masks and goggles. Mr. Peters was not required to supply his own materials or tools, a factor consistent with his being an employee.

Finally, with respect to the freedom to offer services to other entities, the record is clear that Mr. Peters was permitted to offer his services to other employers and did so. However, this fact is of little significance when considered in the context of this case. Aside from working for a third person, there is no evidence that Mr. Peters offered his services to other employers on a regular basis, bid on other jobs, or considered himself to be an independent contractor taking discrete projects as they were offered. Moreover, the intermittent nature of the work for ACC on the Aurora job does not by itself render Mr. Peters an independent contractor. It is undisputed that he had worked for ACC for approximately fifteen years, indicating the existence of a long-standing employment relationship.

Viewing these circumstances as a whole, we conclude that the record supports the trial court's finding that Mr. Peters would likely prevail at trial in establishing that he was an employee of ACC and not an independent contractor when he injured his foot.

*Medical Benefits*

In its notice of appeal, ACC questions "[w]hether the Court erroneously found that the employee was entitled to additional medical treatment when causation was not established." In its brief filed on appeal, however, the only issue raised is whether the trial court erred in finding that Mr. Peters was an employee. The trial court's ruling regarding medical benefits is not mentioned. As stated by the Tennessee Supreme Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). At this point, there is no indication in the record that the injury did not occur as described by Mr. Peters or that his condition is attributable to some other cause. It is undisputed that Mr. Peters informed Mr. Mitchell of the fall on the night it occurred and mentioned his increasing difficulties on other occasions. Moreover, the medical records contain nothing to contradict Mr. Peters'

7

account of his injury or otherwise suggest that his complaints and diagnosis of foot sprain are inconsistent with his reported mechanism of injury.

We do note, however, that the trial court ordered ACC to authorize a return appointment for Mr. Peters with Dr. Lord for the purpose of obtaining a causation opinion. Although an injured worker may have a statutory right to medical benefits assuming the applicable proof requirements are met, there is no right to a causation opinion as such. *See generally* Tenn. Code Ann. §§ 50-6-204, 50-6-239(d)(1); Tenn. Comp. R. & Regs. 0800-02-17-.15 (2014). If a court determines that medical benefits are appropriate, the court can order the initiation of such benefits and the parties may ask the physician to address causation should they choose to do so. As we have previously observed, it is each party's responsibility to secure expert opinions or other evidence necessary to meet any applicable burden of proof. *Arciga v. AtWork Pers. Serv.*, No. 2015-02-0217, 2016 TN Wrk. Comp. App. Bd. LEXIS 6, at *8-9 (Tenn. Workers' Comp. App. Bd. Feb. 2, 2016); *Pool v. Jarmon D&Q Transp.*, No. 2015-06-0510, 2016 TN Wrk. Comp. App. Bd. LEXIS 1, at *9-10 (Tenn. Workers' Comp. App. Bd. Jan. 4, 2016). The trial court's order is modified accordingly.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision at this interlocutory stage of the case. Nor does the trial court's decision violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial court's decision is affirmed as modified. The case is remanded for any further proceedings that may be necessary.

Marshall L. Davidson, III
**Marshall L. Davidson, III**
**Presiding Judge**
**Workers' Compensation Appeals Board**

8



**FILED**

**February 8, 2016**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

**Time: 2:00 PM**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| James Peters | ) | Docket No. 2015-02-0209 |
| | ) | |
| v. | ) | |
| | ) | State File No. 49650-2015 |
| Jonathan Mitchell d/b/a | ) | |
| A Clean Connection, LLC, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 8th day of February, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| James Peters | X | | | | X | jpeters-1305@hotmail.com, 1812 Lamont Street Kingsport, TN 37664 |
| Michael L. Haynie | | | | | X | mhaynie@manierherod.com |
| Brian Addington, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: Jeanette.Baird@tn,gov