

**FILED**

**August 4, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 9:11 AM**



### COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| **AMANDA SPAIN** | ) | **Docket No.: 2015-07-0086** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 10923/2015** |
| | ) | |
| **HEALTH SOUTH CANE CREEK** | ) | **Date of Injury: February 10, 2015** |
| **REHAB HOSPITAL** | | |
| **Employer,** | ) | |
| **And** | ) | **Judge: ALLEN PHILLIPS** |
| | | |
| **ARCH INSURANCE COMPANY** | ) | |
| | ) | |
| **Insurance Carrier.** | ) | |
| | ) | |

---

### EXPEDITED HEARING ORDER GRANTING TEMPORARY
### DISABILITY BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Amanda Spain (Ms. Spain), the Employee, on June 16, 2015, with the Tennessee Court of Workers' Compensation Claims, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if temporary disability benefits should be initiated.

The undersigned Workers' Compensation Judge conducted an in-person evidentiary hearing on July 8, 2015. Ms. Spain testified live at the Expedited Hearing. No representative of Health South testified.

Considering the positions of the parties, the applicable law, and the evidence submitted, the Court hereby finds that Ms. Spain would likely prevail at a hearing on the merits and is entitled to temporary partial disability benefits.

1

# ANALYSIS

## Issue

*Whether Ms. Spain is entitled to temporary disability benefits.*

## Evidence Submitted

Stipulations of the Parties:

- Date of Injury: February 10, 2015;
- Average Weekly Wage: $620.05/Compensation Rate: $413.38;
- Dr. Ragsdale is the authorized treating physician; and,
- Ms. Spain's period of temporary disability, if owed, began on May 27, 2015, and continues until Ms. Spain reaches maximum medical improvement (MMI) or is able to return to work.

The Court admitted the following exhibits into evidence:

1. Medical records of Dr. Ragsdale;
2. Wage Statement;
3. Employee Counseling Form dated November 7, 2014;
4. Employee Counseling Form dated January 22, 2015; and,
5. Employee Counseling Form dated April 3, 2015.

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD);
- Dispute Certification Notice (DCN); and,
- Request for Expedited Hearing.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

## History of Claim

Ms. Spain is a thirty-five-year-old resident of Gibson County, Tennessee. Health South Cane Creek Rehab Hospital (Health South) is a rehabilitation hospital in Martin, Tennessee. Ms. Spain began working for Health South on August 26, 2002. In 2014 and 2015, Ms. Spain worked as a unit secretary. Her job duties included: transcribing physicians' orders, creating new admission charts, breaking down discharge charts, and

batching. She also answered the telephone, passed lunch trays to residents, and ordered supplies. She spent hours at a time using her hands and fingers inputting data into a computer. Her job duties differed from day to day.

Ms. Spain testified that her symptoms in her hands existed for a couple of years; however, the problems worsened in January 2015. At that time, she lost grip strength and her hands were constantly numb. After reporting the injury to her employer, Ms. Spain selected Dr. Blake Ragsdale from a panel of physicians offered by Health South.

On February 20, 2015, Ms. Spain saw Dr. Ragsdale and complained of pain, numbness, and tingling in both hands and wrists. Upon examination, Dr. Ragsdale diagnosed numbness, wrist pain, and hand pain. Because he suspected carpal tunnel syndrome, he ordered a nerve conduction study. The study confirmed moderate left carpal tunnel syndrome and mild right carpal tunnel syndrome. As a result, Dr. Ragsdale recommended bilateral carpal tunnel release.

Prior to her first surgery, Health South terminated Ms. Spain on April 3, 2015, for violation of company policy. Health South cited the following violations as the basis for her termination: "unapproved overtime, failure to comply with set hours each day, and a total of three occurrences since the revised attendance policy set forth on January 28, 2015." (Ex. 5.) Ms. Spain disagreed with Health South using the attendance policy as a basis for termination and contended that other employees who violated the same policy were not terminated. However, Ms. Spain acknowledged that she did have unapproved overtime and failed to comply with her set hours each day.

After her termination, Ms. Spain continued treatment with Dr. Ragsdale. On April 8, 2015, he performed a left carpal tunnel release. Following surgery, Dr. Ragsdale imposed the following light-duty restrictions: "light use of the [left] hand, no forceful gripping or pulling, and no lifting weight greater than one pound." (Ex. 1.) Ms. Spain testified that she was capable of performing her job duties at Health South within these light-duty restrictions, had she not been terminated. Thus, she does not seek any temporary disability for the period of time she was on light-duty restrictions for her left wrist following her first surgery.

Dr. Ragsdale subsequently performed a right carpal tunnel release on May 27, 2015. The operative report was the last medical record admitted into evidence; therefore, there is no medical record before the Court indicating the light-duty restrictions assigned by Dr. Ragsdale following Ms. Spain's right-wrist surgery. However, Ms. Spain's uncontradicted testimony in Court was that Dr. Ragsdale restricted her from any repetitive motion or heavy lifting and no lifting greater than two pounds until her next visit, when he increased the weight restriction to five pounds. Ms. Spain testified that she could not have done her job as a unit secretary with her restrictions on both hands. Specifically, she would have been unable to repetitively write, type, or transcribe orders.

Moreover, Ms. Spain would have been unable to able to pick up a chart, because the charts weigh in excess of five pounds.

Ms. Spain remains on light-duty restrictions from Dr. Ragsdale. She still treats for her work injury and has not yet achieved MMI. Ms. Spain returns to Dr. Ragsdale on August 17, 2015, for follow-up care.

Ms. Spain, through counsel, filed a PBD on May 18, 2015, initially seeking both medical and temporary disability benefits. The parties subsequently resolved the medical benefits issue. However, the parties did not resolve the temporary disability issue through mediation and the Mediation Specialist filed the DCN on June 12, 2015.

## Ms. Spain's Contentions

Ms. Spain contends that she is entitled to temporary disability benefits from May 27, 2015, until either she reaches MMI or Dr. Rasgdale returns her to regular duty. She asserts that, despite her termination, she is nevertheless entitled to temporary disability benefits, because her restrictions following her surgery on May 27, 2015, would have precluded her from performing her job duties as a unit secretary for Health South.

## Health South's Contentions

Health South concedes that *but for* Ms. Spain's termination for cause, she would have been entitled to temporary disability benefits for the stipulated time period beginning on May 27, 2015, in light of Dr. Ragsdale's restrictions. However, Health South contends that Ms. Spain's termination for cause precludes her from receiving temporary disability. Relying on the holding in *Carter v. First Source*, 92 S.W.3d 367, (Tenn. 2002), Health South asserts that they are permitted to enforce their workplace rules and Ms. Spain should not benefit from her legitimate termination for violation of those work rules.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward

4

with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Factual Findings*

Ms. Spain sustained a work-related injury on February 10, 2015, diagnosed as bilateral carpal tunnel syndrome. Health South accepted the claim as compensable. Dr. Ragsdale, the authorized treating physician, placed restrictions upon the use of Ms. Spain's arms following each carpal tunnel release. Ms. Spain testified in an honest and forthright manner concerning her symptoms in her hands and wrists and the impact of Dr. Ragsdale's light-duty restrictions on her ability to perform her job. She testified that she could have performed her job duties as a unit secretary for Health South within her light-duty restrictions following her left carpal tunnel release.

Likewise, Ms. Spain's testified regarding her *inability* to perform her job duties based upon Dr. Ragsdale's restrictions following her right carpal tunnel release. She would have been unable to repetitively write, type, or transcribe orders. Moreover, Ms. Spain would have been unable to able to pick up a chart since the charts weigh in excess of five pounds.

Health South terminated Ms. Spain for cause on April 3, 2015. There was no proof at the Expedited Hearing that Health South could have accommodated Ms. Spain's light-duty restrictions if she had not been terminated.

*Application of Law to Facts*

*Ms. Spain is entitled to temporary partial disability benefits.*

Temporary total disability (TTD) is payable to an injured employee who is totally disabled to work by her injury and while she is recovering as far as the nature of the injury permits. *Cleek v. Wal-Mart Stores, Inc.,* 19 S.W.3d 770, 776 (Tenn. 2000). Under Tennessee law, to establish entitlement to temporary total benefits, the employee must show she was "(1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and her inability to work; and (3) the duration of that period of disability." *Id.* When an employee demonstrates the ability to return to work or attains MMI, then TTD benefits are terminated. *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978). Here, Ms. Spain has not demonstrated by the evidence submitted that she was *totally* disabled from working. Instead, she has restrictions on her activities. Thus, she is not entitled to temporary total disability benefits. However, Ms. Spain may still meet the criteria for an award of temporary partial disability (TPD) benefits.

Temporary partial disability (TPD) refers to the time during which the injured

employee is able to resume some gainful employment but has not yet reached maximum recovery. *Williams v. Saturn Corp.,* No. M2004-01215-WC-R3-CV, 2005 LEXIS 1032, *3 (Tenn. Workers' Comp. Panel Nov. 15, 2005). As with TTD, there must be adequate proof of a causal connection between the injury and the disability for an award of TPD. Health South accepted Ms. Spain's injury as a compensable work injury; therefore, there is no question that a causal connection existed between the injury and the disability. It is also agreed that Ms. Spain had not reached MMI during the contested time frame. This Court finds Ms. Spain has demonstrated the likelihood of prevailing at a hearing on the merits as to an inability to work within her restrictions from Dr. Ragsdale.

It is well-settled authority in Tennessee that an employer should be permitted to enforce workplace rules without being penalized in a workers' compensation case. *Carter v. First Source Furniture Group,* 92 S.W.3d 367, 368 (Tenn. 2002). The Court carefully considered Health South's position that, under *Carter,* Ms. Spain's termination for cause precludes her from receiving temporary disability benefits even though Health South could *not* have accommodated her light-duty restrictions had she remained employed. The Court disagrees. An employer cannot avoid paying temporary disability benefits when they have no light-duty work within an injured worker's restrictions. In the present case, Health South conceded that, but for Ms. Spain's termination, she would have been entitled to temporary disability benefits for the relevant period. The Court is aware of no Tennessee authority that disqualifies an employee from receiving temporary disability benefits under the facts as shown by the evidence submitted. The Court finds Ms. Spain credible when she testified that she could not perform the required job functions when on restrictions from Dr. Ragsdale as of May 27, 2015, and ongoing. There is no countervailing proof. Accordingly, the Court finds that Ms. Spain has demonstrated the likelihood of prevailing at a hearing on the merits as to her entitlement to TPD benefits.

TPD is two-thirds (2/3) of the difference between the average weekly wage and what the employee is able to earn in her partially disabled condition. Tenn. Code Ann. § 50-6-207(2)(2014). Here, the stipulated average weekly wage is $620.05 (Ex. 2.) and Ms. Spain is not, due to her restrictions, able to earn a wage. Therefore, her TPD rate is two-thirds (2/3) of $620.05 or $413.38. She is entitled to TPD from May 27, 2015, and ongoing until released without restrictions, or able to resume gainful employment at a job earning the same or better wage she received prior to her injury, or until placed at MMI.

**IT IS, THEREFORE, ORDERED** as follows:

1. The amount of temporary disability benefit is $413.38 per week based on Ms. Spain's average weekly wage of 620.05.

2. Payment of past due benefits in the amount of $4,133.80 shall be made for the period from May 27, 2015, to August 3, 2015, a period of ten weeks.

6

3. Health South or its workers' compensation carrier shall continue to pay to Ms. Spain temporary disability benefits in regular intervals, at the rate of $413.38 per week, until she is no longer eligible for those benefits by 1) reaching MMI; 2) by returning to work at a wage equal to or greater than the pre-injury wage, or 3) by release without restrictions by the authorized treating physician. Health South's representative shall immediately notify the Bureau, Ms. Spain and Ms. Spain's counsel of the intent to terminate temporary disability benefits by filing Form C-26, citing the basis for the termination.

4. This matter is set for Initial Hearing on September 15, 2015, at 10:00 a.m. (CDT).

5. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 4th day of August, 2015.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without**

**your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten (10) calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten (10) calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the

interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 4th day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| James Webb | | | X | amy@newmanwebb.com |
| Eugene S. Forrester, Jr. | | | X | esf@farris-law.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9